The People, ex rel. The Second Avenue Railroad Company, Appellant and Respondent, *v.* The Board of Commissioners of the Department of Public Parks of the City of New York, Appellant and Respondent.

| 97 | 37 |
|----|----|
| 126 | 506 |
| 97 | 37 |
| 152 | 55 |
| j 152 | 398 |
| 97 | 37 |
| 166 | 47 |

An order denying a motion to quash a common-law *certiorari*, issued in a case not reviewable by *certiorari*, is appealable to this court.

*Jones* v. *People* (79 N. Y. 45), distinguished.

Such a writ lies only to inferior tribunals or officers' exercising judicial powers, to correct errors of law affecting materially the rights of parties.

The fact that a public agent exercises judgment and discretion in the performance of his duties does not make his action or powers judicial in their character.

The board of commissioners of the department of public parks of the city of New York, claiming authority by statute (§§ 1, 3, chap. 534, Laws of 1871; chap. 613, Laws of 1873; § 14, chap. 329, Laws of 1874) consented to the construction of an elevated bridge over the Harlem river by the S. R. T. Co., and entered into a contract with that company for the building of the bridge at its expense under certain regulations and conditions. *Held*, that the proceedings of the board were not reviewable by *certiorari ;*

as, if they had the power, they acted as public agents, and their action was not subject to review in that manner; if they had no power, their consent was a nullity and affected the rights of no one.

A writ of *certiorari* was directed to the board as such.  *Held*, that as the board was a mere department of the city government (Chap. 335, Laws of 1873), and no action could be brought against it by its official name, the writ was irregular; it should have been directed to the members of the board "by their names." (Code of Civ. Pro., § 2129.)

(Argued May 8, 1884; decided October 7, 1884.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, made November 30, 1883, which affirmed the proceedings of defendant set forth in the opinion.

*Thomas F. Wentworth* for relator.    The board of commissioners of the department of public parks of the city of New York had no jurisdiction in the premises. (*Maxmillian* v. *Mayor*, 62 N. Y. 160; *Ham* v. *Mayor*, 70 id. 463.) The consent of the department of public parks to the location and erection of a bridge across the Harlem was an unlawful assumption of control over a navigable river, which control is exclusively in the State. (3 Kent, 412 [498]; *Gilman* v. *Philadelphia*, 3 Wall. 372; *Crandall* v. *State of Nevada*, 6 id. 35; *Pound* v. *Turk*, 5 Otto, 463; *People* v. *S. & R. R. R. Co.*, 15 Wend. 133; *People* v. *Tibbetts*, 19 N. Y. 523; *People* v. *Schermerhorn*, 19 Barb. 559; *F. P. B. Co.* v. *Smith*, 30 N. Y. 44; Laws of 1858, chap. 360; Laws of 1855, chap. 121; Laws of 1867, chap. 697; Laws of 1868, chap. 288.) The Suburban Rapid Transit Company has never obtained the legislative consent of the people of the State of New York to erect a bridge across the Harlem river, and consequently the park department cannot authorize that to be done which is reserved to the State. (*Matter of N. Y. El. R. R. Co.*, 70 N. Y. 327; *Matter of R. W. Com'rs*, 66 id. 418.) The judgment or determination of the commissioners of public parks was an illegal assumption of judicial powers in that they resolved themselves into a

court to determine the non-user and forfeiture of the franchise and privilege granted by the act of 1855. (*Denike* v. *N. Y. & R. L., etc., Co.,* 80 N. Y. 599 ; *Matter of N. Y. El. R. R. Co.,* 70 id. 327 ; Angell & Ames on Corp., § 777 ; *People* v. *M. Co.,* 9 Wend. 382 ; *B. & A. R. R. Co.* v. *Cary,* 26 N. Y. 75 ; *Trustees of Vernon* v. *Hills,* 6 Cow. 23 ; 2 Bosw. 46 ; 3 Sandf. Ch. 625 ; 5 Duer, 676 ; Hopk. Ch. 361.) The supreme authority over navigable tide waters resides in the Congress of the United States for the regulation of commerce. But when Congress has not asserted it, the power to build or authorize bridges over the tide waters belongs to the State. (*Gilman* v. *Philadelphia,* 3 Wall. 732 ; *Crandall* v. *State of Nevada,* 6 id. 35 ; *Pound* v. *Turk,* 5 Otto, 463 ; *People* v. *S. & R. R. R.,* 15 Wend. 133 ; 17 Johns. 195 ; 20 id. 90 ; 19 N. Y. 523 ; 33 id. 461.) The right to authorize bridges over the Harlem river and Spuyten Duyvil creek has been so long exercised by the State, and so long disclaimed by the city, that no doubt has existed as to the power. (*Thompson* v. *People,* 23 Wend. 541 ; *Thompson* v. *H. R. R. Co.,* 3 Sandf. Ch. 62.) The State has the title to all the navigable waters within its borders, subject only to the jurisdiction of Congress for protection of commerce. (*People* v. *Tibbetts,* 19 N. Y. 523 ; *People* v. *C. R. R.,* 42 id. 283 ; *People* v. *Canal Appraisers,* 33 id. 465, 467 ; *Canal Appraisers* v. *People,* 17 Wend. 571.) An order quashing a writ of *certiorari* is the exercise of a discretionary power in the lower court, and is not the subject of review on appeal. (*Haneman* v. *B'd of Tax Com'rs,* 85 N. Y. 655 ; *People* v. *Stilwell,* 19 id. 533.) There can be no difference between an order quashing such a writ and one denying a motion to quash. (*Jones* v. *People,* 79 N. Y. 45 ; *Maxmillian* v. *Mayor,* 62 id. 160 ; *Ham* v. *Mayor,* 70 id. 463.)

*Burton N. Harrison* for defendant. The park board is — like the police department and the department of public charities and correction — a mere department or subdivision of the city government, under the provisions of chapter 335, Laws of 1873, and is not itself a body corporate. (*Swift* v. *Mayor,*

*etc.*, 83 N. Y. 535.) The writ should be quashed because it was inadvertently granted, and brings up nothing for review. (*People, ex rel. Corwin,* v. *Walter,* 68 N. Y. 409, 411; *People, ex rel.* v. *B'd of Police and Excise,* 69 id. 411.) An order quashing a common-law *certiorari* is appealable to this court. (Code of Civ. Pro., §§ 2129, 2143, 2125, 2126, 2140, subd. 5; *People, ex rel. Kilmer,* v. *McDonald,* 2 Hun, 70.) The park commissioners had jurisdiction to plan and locate the bridge across the Harlem river as they did and to consent to the building of its bridge by the Suburban Rapid Transit Company. (*Hughes* v. *No. Pacific R. Co.,* 18 Fed. Rep. 106; *People* v. *R. & S. R. R. Co.,* 15 Wend. 114; *People* v. *H. & C. T'p'ke Co.,* 23 id. 254; Laws of 1871, chap. 534; Laws of 1874, chap. 604; Laws of 1875, chap. 606; *People, ex rel.,* v. *B'd Fire Com'rs,* 82 N. Y. 361.) Even if the bridge authorized to be constructed by the Suburban Rapid Transit Company interfered with a first attempt now to be made to construct a bridge by the relators, the proceeding could not be maintained by them. (*Charles River Bridge* v. *Warren Bridge,* 11 Pet. 420; 3 Kent's Com. 459; *Thompson* v. *N. Y. & H. R. R. Co.,* 3 Sandf. Ch. 625; *F. P. Bridge Co.* v. *Smith,* 30 N. Y. 62; *Matter of N. Y. El. R. R. Co.,* 70 id. 327; *Ninth Ave. R. R. Co.* v. *N. Y. El. R. R. Co.,* 7 Daly, 174; *Sixth Ave. R. R. Co.* v. *Gilbert El. Ry. Co.,* 43 Sup. Ct. 313, 314. As the bridge of the Suburban Rapid Transit Company will not occasion any special or peculiar injury to the relator, the relator is not entitled to be heard here with reference to the question whether that bridge is an authorized structure across the Harlem river. (30 N. Y. 63.)

Rapallo, J. This was a common-law *certiorari*, sued out by the Second Avenue Railroad Company, for the purpose of reviewing the proceedings of the respondents in consenting to the construction by the Suburban Rapid Transit Company of an elevated railroad bridge across the Harlem river near the end of Second avenue, and entering into a contract with that company for the building of the bridge at its own expense

under certain regulations and conditions prescribed in the contract.

The Second Avenue Railroad Company claims the right to intervene and review the proceedings on the ground that, by chapter 373 of the Laws of 1855, the privilege of building a railroad bridge across the river, from the end of Second avenue, was granted to that company, and that the bridge proposed to be built by the Suburban Rapid Transit Company will interfere with the exercise of that privilege.

The power of the respondents to authorize or consent to the building of the bridge in question, is claimed to be derived from the act of 1871, chapter 534, sections 1 and 3, and the act of 1873, chapter 613, as amended by the act of 1874, chapter 329, section 14.

The respondents also contend that the relator has no right to be heard in the matter, inasmuch as the rights claimed by it under the act of 1855 have been abandoned and lost; also, that the only authority ever conferred upon it was to build a surface railroad bridge, connecting with its horse railroad, a structure which would be impracticable under the present legal restrictions as to bridging the Harlem river; and, further, that the bridge proposed to be constructed by the Suburban Rapid Transit Company, which is an elevated railroad bridge, would be no interference with the privilege granted to the relator in 1855, if it still existed.   It is apparent that the real controversy in this matter is between the relator and the Suburban Rapid Transit Company, which last-named Company is not a party to this proceeding.   Neither the relator nor respondents would consequently be finally concluded by any determination we might now make.   Supposing, for present purposes, that this court should be of opinion that the relator is right in its construction of the legislative acts before referred to; that those acts relate wholly to public bridges, to be erected by and at the expense of the city, and confer no power on the park department to authorize or consent to the construction of a railroad bridge by a private corporation for its own purposes; still that question ought not to

be decided in the absence of the Suburban Rapid Transit Company, the party chiefly interested, and who would not be bound by the decision.

There may also be reasons why the relator should not be allowed a standing in court to question the proceedings of the respondents. We think that the validity of the consent given should not be adjudicated in the present proceeding, and it should not be either vacated or affirmed, unless the case comes before us in such a shape as to constrain us to determine its validity and effect.

The respondents moved to quash the writ of *certiorari* on several grounds, and the motion was denied. An appeal is taken from the order of denial. It is claimed that order is not appealable and the case of *Jones* v. *People* (79 N. Y. 45), is referred to as an authority to that effect. That case simply decides that where a *certiorari* has been lawfully issued, it is discretionary with the court whether or not to quash it. The question presented in that case was whether the Supreme Court might lawfully issue a *certiorari* to remove an indictment into that court from the Court of Oyer and Terminer, at the instance of the prosecution. This court held that the Supreme Court had power to issue the writ, and therefore it was within its discretion whether to quash it, or remand the case to the Oyer and Terminer, or proceed to its disposition in the Supreme Court, and that no appeal would lie from an order denying a motion to quash. The case is not an authority for the proposition that an order denying a motion to quash a *certiorari* irregularly or improperly issued, in a case not reviewable on *certiorari*, is not appealable. In such a case this court might of its own motion direct the writ to be quashed.

One of the grounds of the motion to quash in the present case was that the proceedings of the respondents sought to be reviewed were not of a judicial character, and consequently not reviewable on writ of *certiorari*. If this point was well taken the writ should have been quashed and the court below had no discretion in the matter.

It is difficult to conceive in what respect the respondents

acted judicially in giving their consent to the erection of the bridge in question, or in making the contract with the Suburban Rapid Transit Company. If they had the power claimed, to give the permission and enter into the contract, they acted as public agents, in the exercise of delegated governmental powers, and their action was not subject to review on *certiorari.* Whether or not the relator had exclusive rights under the act of 1855, which would be infringed by the construction consented to by the park commissioners, was not a point to be adjudged by the commissioners. Their consent bound only the State or the municipality and could not affect the rights claimed by the relator, if they existed. On the other hand, if the park commissioners had no power in the matter, their consent was a mere nullity, binding no one, and affecting the rights of no one. A common-law *certiorari* lies only to inferior tribunals or officers exercising judicial powers, to correct errors of law affecting materially the rights of parties. The fact that a public agent exercises judgment and discretion in the performance of his duties does not make his action or powers judicial in their character. (*People* v. *Walter*, 68 N. Y. 403.)

A further objection was taken to the regularity of the writ. It was directed to the board of commissioners of the department of public parks. Section 2129 of the Code of Civil Procedure provides that where the writ is brought " to review the determination of a board or body other than a court, if an action would lie against the board or body in its associate or official name, it must be directed to the board or body by that name ; otherwise it must be directed to the members by their names."

The park board is a mere department of the city government. (Laws of 1873, chap. 335.) It is not a corporation, and there is no statute authorizing actions to be brought against it by its official name. We see no answer to this objection.

Other reasons were assigned in support of the motion to quash which are worthy of consideration, but those already referred to are in our judgment sufficient to require that the motion should have been granted.

The order of the General Term should be reversed and the writ of *certiorari* should be quashed.

All concur.

Ordered accordingly.