Robinson Verrill, Jr. v. Giles Dewey, Charles Daley, Jr. and Town of Stowe

[299 A.2d 182]

No. 57-72

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed December 5, 1972

628

*McKee, Clewley & Fitzpatrick,* Montpelier, for Plaintiff.

*Richard E. Davis, Esq.,* Barre, for Charles Daley, Jr.

*Parker & Sargent,* Morrisville, for Giles Dewey and Town of Stowe, Defendants.

**Daley, J.** This is a civil action brought in the Lamoille County Court seeking damages for loss of income and business resulting from the revocation of a first class license as defined in 7 V.S.A. § 2. The plaintiff was the holder of the license, and the defendants Dewey and Daley, selectmen of the Town of Stowe, revoked his license in their *ex officio* capacity as control commissioners (hereinafter referred to as commissioners). 7 V.S.A. § 166. The plaintiff stipulated that the revocation was neither malicious nor corrupt. Subsequent to that revocation, the plaintiff obtained from this Court a writ of prohibition restraining the defendants from revoking his license. See *Verrill* v. *Daley,* 126 Vt. 444, 236 A.2d 238 (1967).

During the course of the proceedings in the present action, defendants Dewey and the Town of Stowe filed a "Motion to Dismiss for Failure to State a Claim upon which Relief can be Granted". Defendant Daley filed a "Motion for Summary Judgment or Judgment on the Pleadings" on the ground that no claim was stated upon which relief could be granted because he is immune from personal liability for his acts as a public officer. The county court subsequently ordered judgment entered for all defendants from which the plaintiff appeals.

█ █ Under the law of this jurisdiction, public officers, when exercising a judicial function, are immune from civil liability. *Nadeau* v. *Marchessault,* 112 Vt. 309, 311, 24 A.2d 352 (1942); *Banister* v. *Wakeman,* 64 Vt. 203, 208, 23 A. 585 (1891). However, this shelter of immunity protects the public officer only when he acts within his general authority. *Polidor* v. *Mahady,* 130 Vt. 173, 174, 287 A.2d 841 (1972); *Nadeau* v. *Marchessault, supra,* 112 Vt. at 313.

██ The test to determine whether the function the public officer is performing is of a judicial nature was best stated in *Davidson* v. *Whitehill*, 87 Vt. 499, 505–06, 89 A. 1081 (1914):

"It must be conceded at the outset that acts of a judicial character are not confined to the courts. It is the quality of the act and not the official classification of the actor that determines this question. When considering whether a particular act of a court, or an officer charged with judicial or *quasi* judicial functions is judicial . . . , the exercise of judgment and discretion is deemed the distinguishing test. [Citations omitted.] But this test fails to distinguish judicial from purely executive or administrative functions. Executive or administrative acts often involve the exercise of discretion and judgment. An official act requiring the exercise of discretion and judgment may be executive or judicial according to the nature of the subject matter. [Citation omitted.] As is said in *People* v. *Board of Commissioners*, 97 N.Y. 37: 'The fact that an act is discretionary and that in exercising discretion judgment must be employed, does not prove that the act is judicial.' Mr. Freeman in his note to *Wulzen* v. *Board of Supervisors*, 40 Am. St. Rep. 29, after reviewing many cases deduces the following as the more approved test: 'An action is necessarily judicial if the parties to be affected thereby have a right both to notice of the proceeding and to a hearing in opposition to it before some tribunal which is not otherwise authorized to proceed.' He uses the word 'tribunal' as embracing not alone courts, but also boards or individuals whose duty it is to decide."

██ The sale of intoxicating liquors is a privilege subject to the police power of the state due to the social problems inherent in the consumption of alcohol. *Green Mt. Post No. 1* v. *Liquor Board*, 117 Vt. 405, 409, 94 A.2d 230, 35 A.L.R.2d 1060 (1953); *Billado* v. *Control Commissioners*, 114 Vt. 350, 354, 45 A.2d 430 (1946). Hence, the legislature created a statutory licensing procedure to control the sale of intoxicating liquors. No. 1 of the Acts of the Special

Session of 1934 (Vermont Statutes Annotated, Title Seven). Under the scheme of this legislation, for the purposes of the administration of this act, the liquor control board was established as the paramount authority, and the commissioners as its subordinate agencies. *Verrill* v. *Daley, supra,* 126 Vt. at 446.

This court has already recognized the judicial nature of the functions of these agencies in the granting of licenses by the commissioners, *Crystal Brook Farm, Inc.* v. *Control Commissioners,* 106 Vt. 8, 10, 168 A. 912 (1933), and the revocation of licenses by the liquor control board. *In re: Wakefield,* 107 Vt. 180, 190, 177 A. 319 (1935). In both situations, the exercise of discretion and judgment is required by the agency in reaching a decision.

In reviewing the facts as presented in *Verrill* v. *Daley, supra,* it is obvious that the revocation of the plaintiff's first class license involved the exercise of discretion and judgment on the part of the commissioners. The facts also indicate that following complaints, the commissioners undertook an investigation prior to taking any action, an "inquiry of fact" also recognized as an element in the performance of a judicial function. *Polidor* v. *Mahady, supra; Nadeau* v. *Marchessault, supra,* 112 Vt. at 311. The commissioners then gave the plaintiff a notice of hearing, and held a hearing before revocation, meeting the test of a judicial function as laid down in *Davidson* v. *Whitehill, supra.* Therefore, the facts clearly show that the steps that the commissioners took in revoking the plaintiff's license, display that they were acting as a "tribunal" in carrying out a judicial function.

After determining that the commissioners were exercising a judicial function in the revocation of plaintiff's license, we now examine the major point of contention between the parties—whether the commissioners were acting within the scope of general authority in so doing. For an answer, we must first turn to the statutory language enunciating the duties of the commissioners in this situation. 7 V.S.A. § 236 states:

> "The control commissioners or the liquor control board shall have the power to suspend or revoke any permit

or license granted pursuant to this title in the event the person holding such permit or license shall at any time during the term thereof so conduct his business as to be in violation of the conditions pursuant to which such permit or license was granted or of any rule or regulation prescribed by the liquor control board. No revocation shall be made until the permittee or licensee shall be notified and be given a hearing before the liquor control board, unless such permittee or licensee shall have been convicted by a court of competent jurisdiction of violating the provisions of this title. . . ."

■ The first sentence of 7 V.S.A. § 236 clearly grants the general power and authority to the commissioners to revoke a first class license. They may do so on their own volition where the licensee has been convicted by a court of competent jurisdiction of violating a provision of Title Seven. However, in this situation where the plaintiff had not been convicted by a court of such violation, an exception to this general power of revocation existed, i.e., no revocation could be made until the licensee had been notified and given a hearing before the liquor control board. By the commissioners' undertaking, prior to revocation, the mandate of notice and hearing instead of the liquor control board, this Court held that, ". . . they exceeded the limits of authority granted to them under the statute. . . ." *Verrill* v. *Daley, supra,* 126 Vt. at 447.

To determine whether the commissioners were acting outside the scope of their general authority in this situation, it becomes necessary to examine what is meant by the word authority in these circumstances. The authority of a public official to act in a judicial capacity is synonymous to the jurisdiction of a court of law. As a public officer is civilly liable for acts outside the scope of his general authority, so is a judge when he acts outside of the jurisdiction conferred upon him by law. However, a distinction exists between actions undertaken in clear absence of jurisdiction and actions only in excess of jurisdiction. *Polidor* v. *Mahady, supra,* 130 Vt. at 175. This distinction was first examined by Mr. Justice

Field in *Bradley* v. *Fisher*, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646, 651 (1872):

"A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject matter. Where there is clearly no jurisdiction over the subject matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination upon these particulars the validity of his judgments may depend. . . . [I]f . . . a judge of a criminal court, invested with general criminal jurisdiction over offenses committed within a certain district, should hold a particular act to be a public offense, which is not by the law made an offense, and proceed to arrest and try the party charged with such act, or should sentence a party convicted to a greater punishment than that authorized by the law upon its proper construction no personal liability to civil action for such acts would attach to the judge, although those acts would be in excess of his jurisdiction, or of the jurisdiction of the court held by him, for these are particulars for his judicial consideration, whenever his general jurisdiction over the subject matter is invoked. Indeed, some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction, or that of the court held by him, or the manner in which the jurisdiction shall be exercised."

The above observations by Mr. Justice Field were quoted with favor in *Vauers* v. *Heisel,* 361 F.2d 581, 590–91 (3d Cir. 1966), cited in *Polidor* v. *Mahady, supra.*

In the case at hand, the commissioners clearly had general authority over the subject matter, the revocation of first class licenses. However, they took it upon themselves to give notice and hearing to the plaintiff instead of referring the matter to the liquor control board prior to revocation for their approval as required by 7 V.S.A. § 236. *Verrill* v. *Daley, supra,* 126 Vt. at 446. This judicial decision, involving discretion and judgment, concerned the manner in which their general authority to revoke licenses should be exercised. Under the circumstances the commissioners clearly had the authority under 7 V.S.A. § 236 to impose a penalty of license suspension on the plaintiff without referral to the liquor control board. But in this case they imposed the greater punishment of revocation without the previous hearing by the liquor control board. Thus, they acted in excess of their authority rather than in clear absence of authority. Such actions are well within the protection of immunity for the exercise of judicial functions. *Polidor* v. *Mahady, supra; Bradley* v. *Fisher,* supra.

The recognition of judicial-type immunity for tribunals assigned the duty of administering laws when they exercise judicial functions is based also upon sound public policy. A tribunal such as the commissioners in this case are called upon to make countless decisions affecting privileges conferred by the legislature. Each time such a decision is made, the tribunal must carefully weigh the facts of the case, thoroughly familiarize itself with the law applicable to these facts, and come to a decision based on both law and fact. In so doing, they are performing tasks identical to a judge trying a case without a jury.

In *Banister* v. *Wakeman, supra,* 64 Vt. at 208, Justice Thompson recognized that immunity from liability for judges is essential for the due administration of justice. He stated:

"It is a privilege not primarily designed for the protection of the judge, but for the *protection of the public,* by making the judges free, independent and fearless in the discharge of their duties. No judge could act inde-

pendently if conscious that he was exposed to an action by every disappointed suitor in his court."

The same is true in this situation.

In the decisions that tribunals are called upon to make, they must also be "free, independent and fearless in the discharge of their duties" to insure the proper administration of the authority by law delegated to them by the legislature. It would be most difficult to act in such manner with the threat of civil action by one disgruntled with a decision hovering over the tribunal. Hence, we here hold, that public officers, as members of tribunals, shall enjoy a like immunity as enjoyed by judges, when exercising a judicial function within the scope of their general authority.

Before entering final judgment, we note that the Town of Stowe has been joined as a party defendant, on the theory of *respondeat superior*. However, the commissioners received their powers directly from the state by statute. 7 V.S.A. Chapters 7 and 9. It is only incidental that the selectmen of the Town of Stowe are the commissioners. 7 V.S.A. § 166. They are subordinate to the liquor control board, *Verrill* v. *Daley, supra,* 126 Vt. at 466, not to the town. Hence, when the selectmen are functioning as commissioners, they are under the control of the state, not the town. In determining liability on the theory of *respondeat superior,* it is essential that there be a master-servant relationship, and that the servant is subject to the master's control. See *Minogue* v. *Rutland Hospital,* 119 Vt. 336, 338–39, 125 A.2d 796 (1956). No such right of control being here present, the Town of Stowe cannot be liable for the acts of the commissioners.

*Judgment affirmed.*