### In re Judy Ann's Inc., d/b/a The Loco-Motion

[464 A.2d 752]

No. 82-301

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed June 27, 1983

230

*Niquette, Niquette & Associates,* Winooski, for Appellant.

*Richard C. Whittlesey* of *McNeil, Murray & Sorrell, Inc.,* Burlington, for Appellee.

Gibson, J. Judy Ann's Inc., d/b/a The Loco-Motion, is a bar located in the "Old North End" of Burlington. It holds first- and third-class liquor licenses, which expire on April 30 of each year pursuant to 7 V.S.A. § 232. For reasons which are not in dispute, the Burlington Liquor Control Commission (hereinafter Commission), after public hearing, decided to renew The Loco-Motion's licenses, but subject to several conditions: that the renewed licenses be suspended for 15 days, that a club employee remain at the front door from 8:00 p.m. until closing, that there be no excessive noise from the club, and that the front door be closed immediately after each use.

The Loco-Motion appeals the Commission's order on two grounds. First, it challenges the authority of the Commission to suspend a license for violations which occurred during the term of the previous year's license. Second, it asserts that four members of the Commission had shown bias and prejudice toward the club and should have disqualified themselves from

the renewal proceedings. For reasons which appear herein, we disagree with both claims and affirm.

With regard to the first issue, we are faced with a case of statutory construction. Appellant claims that the Commission is prevented, by the plain language of 7 V.S.A. § 236, from suspending or revoking the licenses for violations during the previous license period. In other words, appellant urges that § 236 only allows the Commission to discipline for license violations during the term in which the violation occurred. That statute reads in pertinent part as follows:

> The control commissioners or the liquor control board shall have power to suspend or revoke any permit or license granted pursuant to this title in the event the person holding such permit or license shall at any time during the term thereof so conduct his business as to be in violation of the conditions pursuant to which such permit or license was granted or of any rule or regulation prescribed by the liquor control board.

In analyzing an issue of statutory construction, the primary objective is to give effect to the intention of the legislature. *Northern Rent-A-Car, Inc.* v. *Conway*, 143 Vt. 220, 222, 464 A.2d 750, 751 (1983); *Wetterau, Inc.* v. *Department of Taxes*, 141 Vt. 324, 327, 449 A.2d 896, 897 (1982). In order to determine legislative intent, it is helpful to review pertinent legislative history and the totality of legislative action on a subject. See *TVA* v. *Hill*, 437 U.S. 153, 207 (1978) (Powell, J., dissenting).

When a statute is unambiguous and susceptible of only one interpretation, we will enforce it as the legislature deliberately framed it. *Riddel* v. *Department of Employment Security*, 140 Vt. 82, 436 A.2d 1086 (1981). However, we will not excerpt a word or phrase and follow what purports to be a literal reading without considering the entire statutory scheme. See *Howe* v. *Smith*, 452 U.S. 473, 480–83 (1981). This Court recently reviewed an analogous statutory interpretation problem in *Bud Crossman Plumbing & Heating* v. *Commissioner of Taxes*, 142 Vt. 179, 185–86, 455 A.2d 799, 800–01 (1982). In *Crossman*, we cautioned against generalizing from the choice of words in one statutory section, standing alone and consid-

ered out of context with the rest of the chapter. *Id.* Although support for appellant's reading of 7 V.S.A. § 236 may be found in the first sentence of that section, "[i]ndividual statutes . . . are to be construed with others *in pari materia* as parts of one system." *Id.* at 185, 455 A.2d at 801. Here, as was the case in *Crossman,* when this is done, appellant's argument collapses.

■ Section 236, which gives the Commission broad authority to control the conduct of the licensees and to discipline for proscribed conduct, is virtually unchanged from the time it was first adopted nearly fifty years ago. 1934 S., No. 1, § 26. Now, however, procedures relative to suspension or revocation of liquor licenses are governed by the Administrative Procedure Act, 3 V.S.A. §§ 801–847. One section thereof, 3 V.S.A. § 814(b), is particularly relevant to this dispute. It provides as follows:

> When a licensee has made timely and sufficient application for the renewal of a license or a new license with reference to any activity of a continuing nature, the existing license does not expire until the application has been finally determined by the agency, and, in case the application is denied or *the terms of the new license limited,* until the last day for seeking review of the agency order or a later date fixed by order of the reviewing court.

3 V.S.A. § 814(b) (emphasis added). Thus, the procedures for handling appeals from 7 V.S.A. § 236 actions specifically envision situations where the license is to be renewed, but subject to limiting terms. Appellant's argument to the contrary, that a license suspension or other limitation can only affect the old license, disregards the plain meaning of § 814(b), which must be read in conjunction with the licensing scheme here in issue. See *Verrill* v. *Daley,* 126 Vt. 444, 446, 236 A.2d 238, 240 (1967).

■ Moreover, it is equally axiomatic that this Court will not presume that the legislature intended absurd or irrational consequences. *Audette* v. *Greer,* 134 Vt. 300, 302, 360 A.2d 66, 68 (1976). Both parties to this litigation agree that a result such as that urged by The Loco-Motion would lead to highly arbitrary enforcement of our liquor laws. Violations occurring near April 30, the date when all liquor licenses expire, would

either have to be dealt with instantly, an impossibility given the hearing provisions of the Administrative Procedure Act, or not at all. See *Verrill* v. *Dewey*, 130 Vt. 627, 632, 299 A.2d 182, 184–85 (1972).

The only other alternative, appellant urges, would be for the Commission not to renew the license for the following year. Obviously, this tack creates other problems. If the only penalty were the refusal to grant renewals at all, then every infraction would have to be punished equally, regardless of its severity. Given the breadth of the liquor regulations, such an interpretation is unreasonable. A violation of Regulation No. 11, which requires that the license be framed "under glass," hardly merits equal censure as violations of Regulation No. 41, here in issue, requiring licensees to prevent "disturbances, brawls, fighting [and] unlawful conduct" in or adjacent to the premises.

We are convinced that the legislature intended no such result. The legislature has spelled out in 7 V.S.A. § 1 its intention that the liquor laws should be liberally construed to protect the public welfare, order and health. With such a clear manifestation of legislative intent regarding liquor law enforcement, this Court will not interpret a statute producing absurd results in the face of an overall rational scheme that appears from a review of the totality of the legislative action. We therefore agree with the Commission that license suspensions or other limitations may be attached to new licenses.

The Loco-Motion's second claim of error is that four members of the Commission should have disqualified themselves because of various public statements made primarily in connection with an organization known as the Old North End Voice Community Development Committee. It is clear that the liquor commissioners act in a quasi-judicial capacity and exercise considerable discretion and judgment in granting or denying a license. *Verrill* v. *Dewey, supra,* 130 Vt. at 631, 299 A.2d at 184. It is also clear that a liquor license is a privilege and not a right. *Green Mountain Post No. 1* v. *Liquor Control Board,* 117 Vt. 405, 409, 94 A.2d 230, 233 (1953). The presumption of honesty and integrity which attaches to administrative tribunals, *Withrow* v. *Larkin,* 421 U.S. 35, 47 (1975), is not rebutted by bare allegations of bias. Thus, appellants

must show that the liquor commissioners abused their discretion when they declined to disqualify themselves.

Here, the Commission, after receiving complaints from residents of the North End, held a public hearing. Appellant was represented by counsel, yet did not contest the evidence of violations. The fact that several commissioners had taken public positions on the revitalization of Burlington's North End did not work a per se disqualification on them. Cf. *Hortonville Joint School District* v. *Hortonville Education Association,* 426 U.S. 482, 493 (1976). This is particularly true in situations such as this where the Commission, by statute, is comprised of the members of the Burlington City Council. 7 V.S.A. § 166. Absent a showing that a commissioner is not "capable of judging a particular controversy fairly on the basis of its own circumstances," *Hortonville, supra,* 426 U.S. at 493, disqualification is not required.

Turning now to specific allegations of bias, appellant claims the "most prejudicial precommitment" was held by a commissioner who sponsored a resolution which was presented to the city council in January of 1982 and which would require The Loco-Motion and one other north end nightspot to hire an off-duty policeman from 9:30 p.m. until closing each night of the week to assist in crowd control. However, four months later, when the Commission ordered that an employee be stationed at the front door from 8:00 p.m. until closing, the appellant did not pursue its objection. On appeal, it claims only that the fifteen-day suspension was beyond the scope of the Commission's statutory authority. It does not challenge in any particular the other restrictions which the Commission placed upon the club's operations. We therefore disregard the allegedly prejudicial statements which relate to issues not briefed and are thus not properly before us. In any event, the commissioner in question asserted on the record that he was "more than willing to listen to both sides of the situation before [deciding]." Prior statements by a public figure on a topic of local concern do not alone demonstrate "personal bias or personal prejudice" as the appellant asserts.

Perhaps even more significant is the fact that the commissioners to whom appellant objects signed the order re-

newing the licenses for another year. The mere fact that the thirteen-member commission voted to suspend appellant's license for fifteen days, after hearing unrefuted testimony of at least four infractions of liquor board regulations, does not provide evidence of bias.

We agree with appellant that it is entitled to a fair and open hearing. Indeed, the better practice might have been for the challenged commissioners to disqualify themselves to avoid the appearance of impropriety. However, after careful review of the record, we find no abuse of discretion in their failure to do so. The various allegations concerning specific commissioners need not be reviewed in detail. We note only that comments which the appellant would have us find to be compelling evidence of prejudgment are ambiguous at best. In view of the Commission's decision to renew appellant's license, subject only to a fifteen-day suspension, no abuse appears.

*Judgment affirmed.*