58

Thomas M. KING

v.

The FEDERAL DEPOSIT INSURANCE
CORPORATION and Sanders &
Mock Associates, Inc.

The FEDERAL DEPOSIT INSURANCE
CORPORATION

v.

Thomas M. KING.

The FEDERAL DEPOSIT INSURANCE
CORPORATION

v.

SANDERS & MOCK ASSOCIATES, INC.

SANDERS & MOCK ASSOCIATES, INC.

v.

The FEDERAL DEPOSIT INSURANCE
CORPORATION.

Civ. A. No. 90–55.

United States District Court,
D. Vermont.

Feb. 25, 1992.

Richard Foote, Conley & Foote, Middlebury, Vt., for plaintiff.

Mary Miles Teachout, Teachout, Brooks, Moore & McNally, Norwich, Vt., and Michael McGaughran, Assistance Transaction Branch, The Federal Deposit Ins. Corp., Boston, Mass., for defendant The Federal Deposit Ins. Corp.

John L. Kellner, Langrock Sperry & Wool, Middlebury, Vt., for defendant Sanders & Mock Associates, Inc.

OPINION AND ORDER

COFFRIN, Senior District Judge.

Thomas M. King filed a Complaint against Dartmouth Banking Co. ("Dartmouth")[1] and Sanders & Mock Associates, Inc., ("Sanders & Mock") on March 1, 1990. Sanders & Mock filed an amended answer on March 22, 1991, and a Motion to Dismiss and/or for Summary Judgment on April 3, 1991, arguing that the statute of limitations period for actions against it had expired. King opposes this motion. For the following reasons, Sanders & Mock's motion to dismiss is denied.

1. On December 11, 1991, this court granted a motion by the Federal Deposit Insurance Corporation (the "FDIC") to substitute the FDIC as a party defendant as liquidating agent for Dartmouth.

## BACKGROUND

On March 1, 1990, King, a citizen of New Jersey, filed a Complaint with this Court against Dartmouth and Sanders & Mock, both citizens of New Hampshire, requesting damages in excess of $50,000. In the Complaint, King alleged that on April 18, 1989, Sanders & Mock held an auction of certain properties owned by Dartmouth and located at 37 and 41 North Main Street in Rutland, Vermont (the "Property"). According to King, the auction was conducted fraudulently. In particular, King alleges that the Sanders & Mock auctioneer (Emory Sanders) engaged in by-bidding, or the practice of fraudulently recognizing phantom bidders to raise the price offered by a legitimate bidder. King also asserts that Dartmouth and Sanders & Mock improperly withheld certain information about the Property before the auction, namely that a lawsuit had recently been filed against it by the Property's tenants. Finally, King asserts that after the auction Dartmouth improperly refused to finance King's purchase of the Property in the manner agreed to by King and Dartmouth before the auction.

## DISCUSSION

■ Sanders & Mock here presents a Motion to Dismiss and/or for Summary Judgment. A defendant may bring a Motion to Dismiss under Fed.R.Civ.P. 12(b)(6) for violation of a statute of limitations if the violation is evident from the Complaint. *See* 2A Moore and Lucas, Moore's Federal Practice ¶ 12.10 (2d ed. 1991). Here, the relevant facts for the motion to dismiss are evident from the Complaint, namely: (1) the auction took place on April 18, 1989; (2) the claims against Sanders & Mock arose out of King's purchase of the Property at the April 18, 1989 auction, and are each specified in the Complaint; (3) the auction was conducted by a licensed auctioneer working in the employ of Sanders & Mock; and (4) the Complaint was filed March 1, 1990.

Sanders & Mock, defendant here, asserts that the relevant statute of limitations for this action is 32 V.S.A. § 7606 which states:

All claims against an auctioneer licensed or recognized under this chapter, and final settlement of accounts between consignors of auctioned goods and any auctioneer licensed or recognized under this chapter shall be made within thirty days of the auction sale from which the claim arose or consignment was made.

King argues that 32 V.S.A. § 7606 "obviously" does not apply to this lawsuit, and the relevant statute of limitations is 12 V.S.A. § 511 which states:

A civil action, except one brought upon the judgment or decree of a court of record of the United States or of this or some other state, and except as otherwise provided, shall be commenced within six years after the cause of action accrues and not thereafter.

King filed the Complaint ten and a half months after the auction sale took place. If the thirty day statute (32 V.S.A. § 7606) applies, the action is barred and the motion to dismiss will be granted. However, if the six year statute (12 V.S.A. § 511) applies, the action can proceed and the motion to dismiss must be denied.

The language of 32 V.S.A. § 7606 on which Sanders & Mock relies appears, at first glance, to apply. The present lawsuit concerns claims against an auctioneer. The claims against Sanders & Mock arose out of an auction sale. However, it is questionable whether the drafters intend section 7606 to apply to the kinds of claims King brings against Sanders & Mock.

King argues that section 7606 applies only to claims against the surety bonds which 32 V.S.A. § 7605 required all licensed auctioneers to file with the Vermont Secretary of State. This argument is without merit. The legislature repealed Section 7605 in 1985 without changing section 7606, leaving no doubt that it did not intend that the term "claims" in section 7606 apply only to claims on the surety bonds required by section 7605. Act of June 4, 1986, No. 257 (Adj.Sess.), § 3. Further, the committee member proposing the repeal of section 7605 did not even mention the effect the repeal would have on section 7606. *Hearing on H. 438 Before the Senate*

*Committee on Government Operations,* 1971 (Adj.Sess.), Tape of April 23, 1986.

The primary goal in statutory interpretation is to effectuate the intent of the legislature. *Burlington Electric Dept. v. Vermont Dept. of Taxes,* 154 Vt. 332, 335, 576 A.2d 450 (1990). "The rules relating to plain and ordinary meanings are, of course, legal truisms invoked in the first instance ... [b]ut these rules are only starting points on the path to the objective of legislative intent...." *State v. Baldwin,* 140 Vt. 501, 510, 438 A.2d 1135. A useful rule is that a legislature is presumed not to intend irrational consequences. *In re J.R.,* 153 Vt. 85, 97, 570 A.2d 154 (1989); *In re Judy Ann's Inc.,* 143 Vt. 228, 232–33, 464 A.2d 752 (1983).

 Section 7606 requires all claims, and final settlement of accounts, be brought *"within thirty days of the auction sale or consignment"* 32 V.S.A. § 7606 (emphasis added). However, an example of one of the kinds of causes of action which can be brought against auctioneers is claims based on warranties given by auctioneers at auction sales. 7 Am.Jur.2d *Auctions and Auctioneers* § 66 (1980). Yet claims for breaches of warranty do not necessarily arise within thirty days of an auction sale. It is unlikely that the legislature intended to cut off entirely all of the different claims against auctioneers which simply do not arise within the first thirty days after the auction. Therefore, section 7606 cannot logically refer to all possible causes of actions against auctioneers which somehow arise in the context of an auction sale, but must be read more narrowly.

When a statute is unclear on its face, a court may resort to legislative history to look for aid in its interpretation. *Swanton Village v. Town of Highgate,* 131 Vt. 318, 305 A.2d 586 (1973); *DeGoesbriand Memorial Hospital, Inc. v. Town of Alburg,* 122 Vt. 275, 169 A.2d 360 (1961). The statutes which would eventually become sections 7605 and 7606 were drafted by the Senate General and Military Committee and added to a bill concerning auctions originally proposed by the House in early 1972. 1971 Adj.Session H. 152. The text of section 7606 as proposed to and passed by the Senate was as follows:

§ 7606. Claims, escrow

(a) [identical to the present text of § 7606]

(b) All gross receipts from an auction sale shall not be taken from the state for a period of thirty days following the sale, but shall be placed in escrow within the state with an escrow determined by the secretary of state in the name of the auctioneer and consignor of the goods auctioned.

1971 Adj.Session Journal of the Vermont Senate p. 249, March 23, 1972. The concern addressed by section (b) is that auctioneers might leave the state without paying Vermont consignors the net proceeds due them from the auction sales. To solve this concern, the Vermont Senate proposed creation of a thirty day escrow account to hold the net proceeds of all auctions. Claims by consignors for their net proceeds naturally had to be brought within thirty days, as that was the statutory duration of the escrow account. Thus, the term "claims" in that version's § 7606(a) referred to claims against the escrow account. The language of then § 7606(a) requiring that "claims against auctioneers ... and final settlement of accounts between consignors ... and any auctioneer" had to be brought within thirty days made perfect sense in the context of a thirty day escrow account holding the net proceeds from sales.

The Committee of Conference ended up dropping § 7606(b), but retaining § 7606(a). 1971 Adj.Session Journal of the Vermont House of Representatives, p. 703, April 3, 1972. The term "claims" could no longer mean "claims against the escrow account." However, it is unlikely that the Committee of Conference intended to greatly extend the breadth of the statute § 7606 when simply trying to reach a compromise bill between two houses of the legislature. Therefore, the "claims" referred to in present day § 7606 must still mean claims by consignors against auctioneers for net proceeds from auction sales.

There is further support to the idea that the term "claim" in this context refers only to a demand for a sum of money under a formally existing arrangement, in the present case, a demand for net proceeds due under a contract to auction. Other Vermont statutes use the term "claim" when limiting the time for running of an action for a specific demand for money due under a contractual relationship. *See e.g.,* claims against decedent's estates, 14 V.S.A. § 1202; claims of creditors against banking institutions, 8 V.S.A. § 1659; claims for worker's compensation, 21 V.S.A. § 656.

Furthermore, it is not irrational for the statutory time period for the bringing of *such* claims to commence with the time of the auction sale or consignment, since such claims *necessarily* arise at the time of the auction sale or consignment. Finally, this reading of 32 V.S.A. § 7606 requires auctioneers and consignors to sort out expeditiously the various obligations between them, which facilitates high volume auction sales in Vermont, and appears to be rational. For these reasons we hold that the Vermont Supreme Court would interpret the term "claim" in the context of 32 V.S.A. § 7606 to mean claims by consignors against auctioneers for the net proceeds from the auctioned sale of their consigned goods.

 King brings three claims against Dartmouth (now the FDIC) and Sanders & Mock. The first is that Sanders & Mock fraudulently raised the auction price by recognizing phantom bidders.[2] The second and third claims are that Sanders & Mock and Dartmouth failed to disclose relevant information at the time of the auction, and that Dartmouth refused to finance King's purchase in the manner agreed on between the parties. These are not claims by a consignor against an auctioneer for proceeds of an auction sale. Therefore, none are covered by 32 V.S.A. § 7606. Because

section 7606 is not applicable to any of the claims here under consideration, the court finds that the applicable statute of limitations is 12 V.S.A. § 511. Therefore, the instant action by King against Sanders & Mock was timely filed.

ACCORDINGLY, IT IS ORDERED that Sanders & Mock's Motion for Summary Judgment on the issue of statute of limitations is DENIED.

---

**2.** Although the first claim is based on fraud, King has not raised the argument that equitable tolling is appropriate. Equitable tolling is normally appropriate when the complained of action is either fraudulent or fraudulently concealed, and lasts only until such time as the injured party discovers or should have discovered the fraud. *Cerbone v. Int'l Ladies' Garment Workers' Union,* 768 F.2d 45, 48 (2d Cir.1985). Since the question of when the alleged fraud was discovered has not been briefed, we are unable to determine whether equitable tolling would be appropriate in this case.