GREEN MOUNTAIN POST No. 1 *v.* LIQUOR CONTROL BOARD.

(94 A2d 230)

November Term, 1952.

Present: SHERBURNE, C. J., JEFFORDS, CLEARY and ADAMS, JJ. and HUGHES, Supr. J.

Opinion Filed January 6, 1953.

*Sylvester & Ready* for the plaintiff.

*Clifton G. Parker,* Attorney General, and *Frederick G. Mehlman,* Deputy Attorney General, for the defendants.

SHERBURNE, C. J.   This is a proceeding in equity to enjoin the defendants from suspending the plaintiff's first and third class licenses. A temporary injunction was issued. After hearing and filing of findings of fact the bill of complaint was dismissed. The only exception taken was to the dismissal of the bill.

So far as material the findings show the following facts: The plaintiff is an unincorporated association of members of the American Legion and the operator of a club, so-called, at its Legion Home in St. Albans. In the spring of 1949 it was issued first and third class licenses. Prior to July 1 of that year information came to the Liquor Control Board in regard to access to clubs in the State by non-members and non-guests. On July 5, 1949, the board promul-

gated and issued certain rules and regulations directed to these clubs, among which was No. 35-D reading as follows:

> "Doors of the club most commonly used shall be equipped with a spring lock and kept locked at all times and shall be equipped with a bell or buzzer for use to gain entrance. The Board may upon application of the club modify this requirement, if in its judgment, the enforcement of the regulation is impractical."

On July 1, 1949, there were 112 clubs in Vermont holding either a first or third class license, or both. 67 of these had spring locks and were equipped with a bell or buzzer, which had been installed voluntarily and were in substantial compliance with the regulation later promulgated on July 5. Among the 67 was the plaintiff. After the promulgation of this regulation the country clubs having licenses and the Owls Club in St. Albans and the Ethan Allen club in Burlington were exempted by the board from compliance therewith. The total number of clubs so exempted is about 12. On September 12, 1949, the board wrote the plaintiff to appear before the board at its office in Montpelier on September 14, 1949, at 2 P. M. to answer to a complaint of violating regulation 35-D, stating that the alleged violation took place on August 31 and September 3, 1949. As a result of telephone conversations from N. Henry Press, Esq., judge advocate for the plaintiff, the time for appearance was changed to September 23, 1949. On that date Mr. Press, as attorney for, and judge advocate of, the plaintiff, and Max Godfrey, its club supervisor, appeared before the full board. Also present were two inspectors and a third inspector was called in. After the chairman of the board had told Mr. Press of two violations about keeping doors locked and information had been given by the inspectors regarding same the hearing was closed. No witnesses were sworn and no formal testimony was taken. On September 26, 1949, the board wrote the plaintiff that after considering the testimony at the hearing on September 23rd it was voted to suspend plaintiff's licenses for a period of 15 days, and ordered plaintiff not to sell or allow to be consumed on its licensed premises any alcoholic liquors after September 28 until October 14. Following receipt of this letter the plaintiff petitioned this Court for a writ of prohibition.

*Petition of Green Mountain Post, No. 1,* 116 Vt 256, 73 A2d 309, pending which the board's order was stayed. This petition was dismissed and the stay was vacated at the May Term, 1950. Previous to that time the board had issued licenses to the plaintiff which were effective until May 1, 1951. On July 5, 1950, the board wrote the plaintiff, calling attention to its former order of suspension and stating that the order staying same was no longer in effect, and suspended plaintiffs' licenses for a period of 15 days from the close of business on July 20, 1950. The present proceedings were commenced on July 11, 1950, and the defendants were enjoined from suspending the plaintiffs' licenses as contemplated until a final determination of the merits of the bill of complaint.

Only two questions are briefed. These are:

1. That the liquor control board did not accord the plaintiff a hearing prior to its order suspending the plaintiffs' licenses.

2. That the regulation (35-D), the violation of which was the basis of the suspension order, is unconstitutional and void.

V. S. 47, § 6164 provides:

"The * * * liquor control board shall have power to suspend or revoke any * * * license granted pursuant to this chapter in the event the person holding such * * * license shall at any time during the term thereof so conduct his business as to be in violation of the conditions pursuant to which such * * * license was granted or of any rule or regulation prescribed by the liquor control board. No revocation shall be made until the * * * licensee shall be notified and be given a hearing before the liquor control board, unless such * * * licensee shall have been convicted by a court of competent jurisdiction of violating the provisions of this chapter. * * *"

Since the only direction for a hearing is in the case of a revocation, the inference is that no hearing is required for a suspension and that the liquor control board may act upon the basis of any knowledge or information available to it, so long as its action is

not arbitrary or capricious, but is made in good faith and with a view of advancing the purpose and policy of the law; unless the statute must be so interpreted as to afford the licensee a hearing before his license can be suspended, in order not to be wanting in due process of law.

Because of the tendency of the use of intoxicating liquors to deprave public morals, it has come to be the generally accepted doctrine that the manufacture or sale of such liquors, and even their possession or use, is not a matter of "common", "inherent", or "natural" right, but, if a right at all, is one held subject to the police power of the state. *Billado* v. *Control Commissioners,* 114 Vt 350, 354, 45 A2d 430, and authorities cited. A license to sell intoxicating liquors is not a contract but a permit to sell subject to restrictions, and from its very nature is subject to revocation in consequence of a disregard of such restrictions or in consequence of a change of policy on the part of the government in respect to the exercise of the police power. *State* v. *Burlington Drug Co.,* 84 Vt 243, 248, 78 A 882; *State* v. *Gibbs,* 82 Vt 526, 74 A 229, 24 LRANS 555. The right of the licensee can rise no higher than the terms of the law under which the license is issued; and the licensee accepts the privilege subject to such conditions, including the cause and manner of suspension or revocation as the general assembly may see fit to impose. *Darling Apartment Co.* v. *Springer,* 25 Del 420, 22 A2d 397, 137 ALR 803. Where, as here, the statute does not provide for a hearing in case of a suspension of a license the plaintiff is bound by its acceptance of the licenses and is subject to the condition that these licenses can be suspended without a hearing. The situation is much similar to that in *Emerson* v. *Hughes,* 117 Vt 270, 282, 90 A2d 910, where a right to a hearing which is not based on common-law principles and is not guaranteed by any constitutional provisions, is stated to be merely what might be termed a gratuity on the part of the Legislature. Since no hearing was required it is unnecessary to determine if the proceeding followed was a hearing.

Our liquor law is contained in V. S. 47, chapter 271, under title 28, and consists of sections 6120-6241. Section 6120 provides:

> "This title is based on the taxing power and the police power of the state, and is for the protection of the public welfare, good order, health, peace, safety and morals of the people of the state, and all of its

provisions shall be liberally construed for the ac-
complishment of the purposes set forth herein."

Section 6121, sub-sec. XIX in so far as here material defines a
"club" as "an unincorporated association or a corporation * * *
which owns, hires or leases a building or space in a building of such
extent and character as may be suitable and adequate for the rea-
sonable and comfortable use and accommodation of its members
and their guests, and providing suitable and adequate kitchen and
dining room space and equipment, implements and facilities."

Section 6171 provides that "the liquor control board shall ad-
minister and enforce the provisions of this chapter, and is author-
ized to prescribe such rules and regulations * * * as may be neces-
sary to carry out the provisions of this chapter."

Laying aside for the present the claims of the plaintiff about
the effect of the second sentence of the regulation and that the
regulation is void by reason of its unequal administration, the plain-
tiff conceded that if the first sentence of the regulation bears a rea-
sonable relation to a bona fide purpose of the liquor control board,
it is a valid exercise of the board's authority. However it submits
that there is no reasonable relationship between the control of in-
toxicating liquor and a requirement of spring locks on the doors
and that the doors must be kept locked at all times. It says there
would be a violation if the club did not have a spring lock on its
door but had a man posted at the entrance to keep non-members
out. It says there would be a technical violation if the doors did
not have that kind of locks, or if a guest or any one gaining admis-
sion failed to immediately see that the door through which he en-
tered was locked. It submits that the regulation is in violation of
the basic principles of fairness which serve as a basis of our juris-
prudence.

As to the sole claim that there is no reasonable relationship be-
tween the control of intoxicating liquors and the requirements of
the regulation it is significant that 67 clubs had voluntarily installed
spring locks and bells or buzzers before the regulation was promul-
gated. In view of the information the board had in regard to the
access to clubs by non-members and non-guests it can hardly be said
that the requirement of spring locks and that the doors commonly
used should be kept locked at all times is unreasonable, since com-
pliance with such requirement would tend to make it more diffi-

cult for non-members and non-guests to gain entrance to where liquors are sold, and consequently less likely that unlawful sales would be made to them. The fact that some other method of regulation would have accomplished the same purpose and would have been less onerous is immaterial in the absence of a showing that the board acted arbitrarily in its choice of method. The ordinary tests of control applicable to ordinary business do not apply. What a legislative body may entirely prohibit, it certainly can regulate drastically. *State* v. *Zazzaro,* 128 Conn 160, 20 A2d 737; *Sepe* v. *Daneker,* 76 RI 160, 68 A2d 101. So also can the board regulate drastically to the extent lawfully delegated. No question is here raised about the scope of the rules and regulations which the board is authorized to prescribe.

Coming to the second sentence of the regulation, that the board may upon application of the club modify this requirement if, in its judgment, the enforcement of the regulation is impractical, the plaintiff contends that this provision makes the regulation void on its face because within the prohibition of the Fourteenth Amendment of the Constitution of the United States, and that if not void on its face it is void by reason of its administration, operating unequally so as to punish the plaintiff for doing what is permitted to others, namely, the Owls Club in St. Albans, the Ethan Allen club in Burlington, and the country clubs, without distinction of circumstances. It submits that this inequality of treatment, especially in regard to the Owls and Ethan Allen clubs, infringes the Fourteenth Amendment, which provides that no state shall deny to any person within its jurisdiction the equal protection of the laws, and violates Articles I and VII of the Constitution of Vermont which, speaking broadly, provide for the equality of individuals before the law.

By the exemption of the Owls, Ethan Allen and country clubs from compliance with the regulation, it is clear that the liquor control board, the author of the regulation, construed the word "modify" as meaning "exempt from," and decided that it was impractical to enforce the regulation against them. Whether a regulation is valid or invalid under the equal protection clause of the Fourteenth Amendment often depends on how the regulation is construed and applied. *Concordia Fire Ins. Co.* v. *Illinois,* 292 US 535, 54 S Ct 830, 78 L ed 1411. The only basis that occurs to us upon which the board can find that it is impractical to enforce the regulation against a club is that the nature or situation of the club

is such that to enforce the regulation, particularly the provision that the doors most commonly used shall be kept locked at all times, would make it so burdensome upon the club to comply with it, especially if it is a country club dependent in large part for support upon greens fees paid by non-member golf players, as to be so out of proportion to any danger of a law violation if not enforced, that enforcement ought not to be required. The result is that the second sentence of the regulation as construed and applied authorizes the division of clubs as defined by statute into two classes: (1) those which are so situated that the burden upon them of compliance with the regulation is so out of proportion to the danger of a law violation without it that enforcement ought not to be required, and (2) those not so situated. In other words, the classification is made upon the degree of burden- that will result from the enforcement of the regulation. It is unnecessary to decide if such a classification is unreasonable and arbitrary and is not based upon a real and substantial difference, having reasonable relation to the purpose for which it is made, so as to be invalidated by the Fourteenth Amendment or by the provisions of the Vermont Constitution. See *State* v. *Auclair,* 110 Vt 147, 160, 4 A2d 107; *State* v. *Scampini,* 77 Vt 92, 115, 59 A 201.

■ The plaintiff is entitled to relief against the regulation, alleged to be unconstitutional, only if the regulation as applied discriminates injuriously against it. *First National Bank* v. *Louisiana Tax Commission,* 289 US 60, 53 S Ct 511, 77 L ed 1030. Consequently the burden of showing that it has been discriminated against is upon the plaintiff. The findings tell us nothing about the situation of the plaintiff club or of the clubs exempted from compliance with the regulation, and there is nothing to show whether they are substantially alike or dissimilar in nature or situation. For aught that appears, had the plaintiff applied to the board under the provisions of the second sentence of the regulation it might have been exempted also. In the absence of a finding that it so applied and was denied it cannot be said that it has been discriminated against in any of the ways claimed.

*Decree affirmed.*