### In re DLC Corporation d/b/a Pour Man's Pub

[712 A.2d 389]

No. 97-321

Present: **Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed May 1, 1998

*Lamar Enzor* of *Abatiell & Valerio*, Rutland, for Plaintiff-Appellant.

*William H. Sorrell*, Attorney General, and *William Griffin*, Chief Assistant Attorney General, Montpelier, for Defendant-Appellee.

**Skoglund, J.** DLC Corporation d/b/a Pour Man's Pub appeals an order of the Vermont Liquor Control Board, which issued a first and third-class liquor license to DLC subject to several conditions. DLC contends that the Board exceeded both its constitutional and statutory authority by placing those conditions upon DLC's liquor license. We affirm.

Laurel Chapman is the sole director and stockholder of DLC, which leased a building in Rutland to be used as a bar — Pour Man's Pub. The building had housed another bar — June's Corner Bar — previously, and Glenn David Chapman, Ms. Chapman's husband, managed June's Corner Bar for several months before DLC leased the premises. While not formally connected with DLC, Mr. Chapman helped develop DLC's business plan, and both the husband and wife had spoken of Pour Man's Pub as if it were a jointly-held business. After Pour Man's Pub opened, Mr. Chapman performed janitorial services and "odd jobs" for the pub. In addition, he tended bar part-time and arranged promotional events and hired entertainment for the pub.

In 1996, DLC applied to the Board for a liquor license, and a hearing was held. At that time, Mr. Chapman had been charged with, but not yet convicted of, the crime of conspiracy relating to the delivery of cocaine, in violation of 13 V.S.A. § 1404(a). On May 16, 1996, the Board granted DLC a first-class[1] and third-class[2] liquor license with the following condition:

---

[1] A first-class license permits a "retail dealer" to sell "malt and vinous beverages." 7 V.S.A. § 222(1).

[2] A third-class license permits a restaurant or hotel operator "to sell spirituous liquors." 7 V.S.A. § 224(a), (b).

It is a specific condition of the continued licensure that Mr. Glenn David Chapman NOT be convicted of the crime he is currently charged with or any other crime of any type, misdemeanor or felony. In the event a conviction of any crime occurs, these licenses shall be subject to immediate review by the Board of Liquor Control and treated as . . . new license applications. The Board will then offer the licensee a hearing and make a decision whether or not to revoke the conditional license issued this date, whether or not to issue a new license, and if so, whether to subject and condition such further license.

In November 1996, a police officer discovered Mr. Chapman smoking marijuana and sitting in an automobile owned and licensed by DLC that was parked in an alley next to the Pour Man's Pub. A small amount of marijuana was also found on Mr. Chapman. He was arrested and later pleaded nolo contendere and was adjudicated guilty of the misdemeanor crime of possession of marijuana. See 18 V.S.A. § 4230(a).

Mr. Chapman's pending conspiracy charge was subsequently amended to a misdemeanor charge of possession of cocaine. On January 8, 1997, Mr. Chapman pleaded nolo contendere to the amended charge and was adjudicated guilty.[3] Upon learning that the condition under which DLC's license was granted had been violated, the Board informed DLC that if DLC did not request a hearing within five days then DLC's liquor license would be revoked. DLC requested a hearing, and the Board held proceedings on June 17, 1997. After the hearing, the Board issued DLC a first-class and third-class liquor license with the following conditions:

1. Glenn David Chapman shall have no legal or de facto ownership interest in or managerial responsibilities for the DLC Corporation, d/b/a Pour Man's Pub; and

2. Because of Glenn David Chapman's prior and repeated criminal activities, including those criminal activities taking place outside of licensed premises, the Board finds it necessary in the public interest and considering the public health, safety and morals, that in the event Glenn David Chapman

---

[3] Mr. Chapman pleaded nolo contendere to this charge, pursuant to 13 V.S.A. § 7041, which is commonly called an "Alford" plea, under which Mr. Chapman's adjudication of guilt could be struck, providing certain conditions subsequent were satisfied.

were to be found on the licensed premises by any competent evidence therefore, this Board will issue an emergency closing order by which the liquor license issued to the DLC Corporation, d/b/a Pour Man's Pub will be immediately revoked pending a hearing which shall be granted on short notice, at which hearing the Board will determine whether once again Glenn David Chapman violated the condition under which the license was issued by being physically on the premises. If this Board finds that CHAPMAN was in fact upon the premises, the license in the discretion of this Board, will be permanently revoked.

This appeal followed.

DLC contends that by conditioning its liquor license upon the requirement that DLC "absolutely" control Mr. Chapman's access to the premises, the Board exceeded its statutory and constitutional authority. First, DLC contends that the second condition is improper because it has nothing to do with the fitness of DLC to conduct its business and sell liquor. In addition, DLC contends that the second condition interferes with its constitutionally-protected right to run a business. Finally, DLC alleges that DLC cannot lawfully control the movements of Mr. Chapman because Mr. Chapman is not a shareholder, owner, or employee of DLC and, therefore, the condition is unreasonable and impossible for DLC to enforce. We disagree.

Traditionally, federal and state treatment of intoxicating liquors has been markedly different than their treatment of most other items of commerce. This disparity in treatment is directly related to intoxicating liquor's "tendency . . . to deprave public morals." *Green Mountain Post No. 1 v. Liquor Control Bd.*, 117 Vt. 405, 409, 94 A.2d 230, 233 (1953). Thus, "it has come to be the generally accepted doctrine that the manufacture or sale of such liquors, and even their possession or use, is not a matter of 'common', 'inherent', or 'natural' right, but, if a right at all, is one held subject to the police power of the state." *Id.*; see also *Billado v. Control Comm'rs*, 114 Vt. 350, 354, 45 A.2d 430, 432 (1946) ("'There is no inherent right in a citizen to . . . sell intoxicating liquors by retail; it is not a privilege of a citizen of the State or of a citizen of the United States.'") (quoting *Crowley v. Christensen*, 137 U.S. 86, 91 (1890)).

Because of intoxicating liquor's potential danger to the community's safety and general welfare, a state has the authority to prohibit its manufacture and sale within the state's boundaries. See

*Billado*, 114 Vt. at 354, 45 A.2d at 432. In place of a complete ban, a state may instead permit the manufacture and sale of intoxicating liquor "'under such conditions as will limit to the utmost its evils.'" *Id.* at 354-55, 45 A.2d at 432 (quoting *Crowley*, 137 U.S. at 91). Vermont has chosen the second option — permitting the manufacture and sale of alcoholic beverages but under conditions set forth by the Legislature, see 7 V.S.A. §§ 1-807, and the Legislature has determined that it will exercise its authority in this area to its constitutionally-permissible limits. See *id.* § 1 ("This title is based on the taxing power and the police power of the state, and is for the protection of the public welfare, good order, health, peace, safety and morals of the people of the state, and all of its provisions shall be liberally construed for the accomplishment of the purposes set forth herein."). Therefore, the Legislature has great latitude in exercising and delegating its authority, fashioning conditions, and regulating the alcoholic beverage field. See, e.g., *Green Mountain Post No. 1*, 117 Vt. at 411, 94 A.2d at 234 ("What a legislative body may entirely prohibit, it certainly can regulate drastically.").

The Legislature created the Liquor Control Board to administer the laws that govern the distribution and sale of alcoholic beverages in Vermont. See 7 V.S.A. § 104. The Board has the express authority to "issue permits under such terms and conditions as it may impose for the furnishing, purchasing, selling, bartering, transporting, importing, exporting, delivering and possessing of alcohol . . . ." *Id.* § 104(8); see also *id.* §§ 221-241 (sections delineating the duties of the Board with regard to licensing).

■ A liquor license, however, is not a contract between the licensee and the state, and it does not give the licensee any vested rights. See *State v. Gibbs*, 82 Vt. 526, 528, 74 A. 229, 230 (1909); *Commonwealth v. Blackington*, 24 Pick. 352, 358 (Mass. 1837) ("[T]he exclusive authority and power to sell spirit by retail, is not conferred on the licensed person, as a benefit or privilege to him, or with a view to give him an exclusive right; but solely because the peace and security, the morals and good order of the community, will be promoted by it, and the exclusive power therefore is collateral and incidental, and not one of the objects and purposes of the law."). Instead, a license to sell intoxicating liquors is a permit to sell, subject to restrictions, and the licensee accepts this privilege, subject to such conditions as the Board sees fit to impose. Cf. *Green Mountain Post No. 1*, 117 Vt. at 409, 94 A.2d at 233 (holding that license may be subject to conditions that the general assembly chooses to enact).

■ Furthermore, the granting and conditioning of a liquor license is a discretionary function. See, e.g., 7 V.S.A. § 222 ("With the approval of the liquor control board, the control commissioners *may* grant" a first or second-class license.) (emphasis added); *id.* § 224(b) ("In those towns voting to permit the sale of spirituous liquors, *in its discretion*, the liquor control board *may* grant" a restaurant operator a third-class license.) (emphasis added); *Carousel Grill, Inc. v. Liquor Control Bd.*, 123 Vt. 93, 94, 182 A.2d 336, 337 (1962) (in regard to liquor licenses "[t]he state may grant the opportunity to some and deny it to others or withhold it entirely"). Therefore, due to the inherent characteristics of intoxicating liquor, the broad authority that is both permitted and exercised by the State and the Board in this area, the traditional nature and purpose of liquor licenses, and the discretion statutorily bestowed on the Board in granting and conditioning liquor licenses, this Court will not reverse the Board's decision regarding liquor licenses if that decision accomplishes "the Board's purposes in regulating the sale of intoxicants and encouraging temperance." *In re Club 107*, 152 Vt. 320, 326, 566 A.2d 966, 969 (1989). With this standard of review in mind, we now turn to DLC's appeal.

■ DLC contends that the condition requiring Mr. Chapman to remain off the premises of Pour Man's Pub is improper because it lacks any relationship to DLC's fitness to conduct its business and sell liquor. We conclude, however, that the condition is reasonably related because it is designed to protect the public's safety, health, and morals, given the fact that Mr. Chapman was convicted of two drug offenses, including one that took place on or very near the premises and involved one of DLC's vehicles. While some other condition may have "accomplished the same purpose and would have been less onerous is immaterial in the absence of a showing that the board acted arbitrarily in its choice" of conditions. *Green Mountain Post No. 1*, 117 Vt. at 411, 94 A.2d at 234. DLC does not allege that the Board acted arbitrarily, and there is no evidence in the record before us that the Board's decision was, in fact, arbitrary.[4]

---

[4] DLC relies on our holding in *In re Club 107*, 152 Vt. 320, 324, 566 A.2d 966, 968 (1989), in an attempt to show that the Board exceeded its authority in establishing such a condition in reference to DLC's liquor license. We find *Club 107* not to be dispositive on the issues in the present case. In *Club 107*, we struck down a Board regulation proscribing obscene, lewd, or indecent entertainment in Vermont night clubs, because it unconstitutionally exceeded the Board's rule-making authority, due to the regulation's lack of a nexus with "a specifically granted power of the Board or . . . the consequences

DLC also contends that the same condition interferes with its constitutionally-protected right to run a business. DLC fails to recognize, however, that the Legislature and this Court have never afforded businesses involved in the alcoholic beverages trade the same protections as other businesses. See *Billado*, 114 Vt. at 355-56, 45 A.2d at 432-33 (The vast majority of constitutional rights conferred to ordinary businesses and professions are not extended to those businesses selling liquor because "the carrying on of which is a mere matter of privilege [and] because of a character tending to be injurious."); *Green Mountain Post No. 1*, 117 Vt. at 411, 94 A.2d at 234 (noting that "[t]he ordinary tests of control applicable to ordinary business do not apply" to those selling or manufacturing intoxicating liquors). As discussed previously, the selling of liquor "is at most a privilege which of necessity is subordinate to the public interest and the police power of the state." *Carousel Grill*, 123 Vt. at 94, 182 A.2d at 337. Thus, the condition does not unconstitutionally interfere with DLC's ability to operate the Pour Man's Pub.

■ Finally, DLC claims that it can not lawfully control Mr. Chapman's movements because he is not a shareholder, employee, or owner of DLC and, therefore, the condition will be impossible for DLC to enforce. Putting aside the facts that Mr. Chapman: (1) is the husband of the sole director and stockholder of DLC, (2) has tended bar, (3) has performed janitorial work, (4) has done "odd jobs" for DLC, and (5) has developed promotional events and hired entertainment for the pub, we find this assertion to be without merit. DLC admits that it has barred fifty-six people from the pub for life and precludes these people from entering the premises. We fail to see why DLC cannot use the same procedures to bar Mr. Chapman from the pub.

*Affirmed.*

of excessive use of alcohol." *Id.* As noted above, the condition imposed on DLC's liquor license is reasonably related to the public's health, safety, and morals.