STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **ADDISON UNIT** | **Docket No. 12-2-19 Ancv** |

Jennifer Zeno-Ethridge and
Dennis Ethridge,
    Plaintiffs,

    v.

Comcast Corporation,
Comcast of CT/GA/MA/NH/NY/NC/VA/VT LLC,
Eustis Cable Enterprises, LTD,
Green Mountain Flagging, LLC, and
Green Mtn.Concert Services, Inc. d/b/a Green Mountain Flagging,
    Defendants.



VERMONT SUPERIOR COURT
FILED
AUG 0 5 2020
ADDISON UNIT

## Decision on Motions

Defendant Eustis Cable Enterprises, LTD's Motion for Judgment on the Pleadings (No. 3)
Plaintiffs' First Motion to Amend Complaint (No. 6)
Defendant Comcast VT's[1] Motion for Judgment on the Pleadings (No. 7)
Defendant Comcast Corp.'s Motion for Judgment on the Pleadings (No. 8)
Joint Stipulation for Extension of Time to Respond to Plaintiffs' Motion to Amend (No. 11)
Defendant Eustis Cable Enterprises, LTD's Motion for Judgment on the Pleadings as to Count II
of the Complaint as May be Amended (No. 12)
Defendant Eustis Cable Enterprises, LTD's Motion for Judgment on the Pleadings as to Counts
I, III, IV, and V of the Complaint as May be Amended (No. 13)

Plaintiffs' five claims in this lawsuit are based on Plaintiff Jennifer Zeno-Ethridge's (hereinafter "Zeno-Ethridge") experience of seeing a flagger's death after a truck backed over him on Route 7. Plaintiffs' five causes of action are: (1) negligence; (2) breach of contract; (3) premises liability; (4) negligent infliction of emotion distress; and (5) loss of consortium. Defendants Eustis Cable Enterprises, LTD (hereinafter "ECE"), Comcast Corp., and Comcast VT seek dismissal of all counts.

There are now five Defendants out of an original 17. In addition to the three Defendants seeking dismissal in the pending motions described above, there are two additional Defendants who are not involved in the pending motions: Green Mountain Flagging, LLC, and Green Mtn. Concert Services, Inc. d/b/a Green Mountain Flagging. Because the three moving Defendants join each other's arguments, the court refers in this Decision to the three moving Defendants collectively as "Moving Defendants" and to specific Defendants only if necessitated by the parties' pleadings and arguments.

---

[1] The full name of this Defendant is: Comcast of Connecticut/Georgia/Massachusetts/New Hampshire/New York/North Carolina/Virginia/Vermont LLC. The parties refer to this entity as Comcast VT, so the court does the same.

While Plaintiffs requested a hearing, and a hearing was scheduled and cancelled twice due to the impact of the COVID-19 pandemic on the Vermont Judiciary and limitations on court hearings, the court resolves these motions without holding a hearing. At this time hearing time is limited and the arguments have been well and thoroughly presented in the filings and memoranda. Accordingly, the court declines to hear oral argument pursuant to V.R.C.P. 78(b)(2).

For the reasons set forth below, the court grants Plaintiffs' Motion to Amend their complaint and dismisses count 2 (breach of contract) and count 3 (premises liability) as brought against Moving Defendants ECE, Comcast Corp., and Comcast VT. Counts 4 (negligent infliction of emotional distress) and 1 (negligence) and 5 (loss of consortium) remain as claims against the Moving Defendants.

### 1. Motion to Amend Complaint and Extend Time to Respond

Upon filing their opposition to ECE's Motion for Judgment on the Pleadings, Plaintiffs moved to amend their complaint. Although there was no ruling by the court on the Motion to Amend, in subsequent filings, the parties relied on the facts asserted in the Amended Complaint. While there are some changes in the Amended Complaint (Defendants who have been dismissed are removed), the claims remain the same. The Moving Defendants argue that Plaintiffs' Motion to Amend their complaint should be denied because amending the complaint is futile.

Once a defendant has answered the complaint, if a plaintiff wishes to amend her complaint, she must request court permission. V.R.C.P. 15(a). The court may allow a plaintiff to amend her complaint if such does not prejudice the nonmoving party, and the amendment is not based in bad faith. *Bevins v. King,* 143 Vt. 252, 255 (1983). Permission to amend a complaint is liberally granted, assuming no prejudice to the nonmoving party. *Id.* at 254. The paramount reasons underlying the liberal amendment policy are: "(1) to provide maximum opportunity for each claim to be decided on its merits rather than on a procedural technicality, (2) to give notice of the nature of the claim or defense, and (3) to enable a party to assert matters that were overlooked or unknown to him at an earlier stage in the proceedings." *Id.* at 255. A motion to amend a complaint may be denied "based upon a consideration of the following factors: '(1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party.'" *Colby v. Umbrella, Inc.,* 2008 VT 20, ¶ 4, 184 Vt. 1 (quoting *Perkins v. Windsor Hosp. Corp.,* 142 Vt. 305, 313 (1982)).

In this case the amendment does not substantively change the claims but updates the complaint to clarify the current parties and claims. The litigation is still at a fairly early stage, and Moving Defendants have used the Amended Complaint in their arguments. No Defendant will be prejudiced as a result. Thus the Motion to Amend (Motion 6) and the Joint Stipulation for Extension of Time to Respond to Plaintiffs' Motion to Amend Complaint (Motion 11) are granted.

## Plaintiffs' Facts

Because the parties relied on the facts in Plaintiffs' Amended Complaint, the court does as well. Plaintiffs set forth the following facts.

Plaintiffs are a married couple. Defendant Comcast Corp. is the sole majority shareholder of Defendant Comcast VT. Defendant ECE performs communication contracting services. The Green Mountain Defendants provide traffic control management services and security and crowd management services.

On March 11, 2016, Zeno-Ethridge was driving south on Route 7 near the intersection with Route 125 in Middlebury, at which time she observed: (1) a truck owned by ECE reversing on Route 7's south-bound shoulder; and (2) a person, Lawrence Kaminski, behind the truck. ECE's truck had neither a rear-view mirror nor a functional reverse-signal sounding mechanism (the truck did not "beep" when it reversed). Zeno-Ethridge saw the truck hit Mr. Kaminski and crush his skull. Mr. Kaminski died from this injury. Zeno-Ethridge, upon seeing the truck hit Mr. Kaminski, parked her car and attempted to warn the truck driver by waiving her arms, yelling, and running towards the truck. The Amended Complaint states that Zeno-Ethridge saw the truck hit Mr. Kaminski before she parked her car. Immediately after Mr. Kaminski was run over, Zeno-Ethridge stood in Mr. Kaminski's brain matter and other body materials; some of these materials were on her clothing as well. She also placed a blanket from her car over his body.

Since the accident, Zeno-Ethridge has suffered from post-traumatic stress disorder (PTSD), major depressive disorder, and anxiety/panic disorder and has required extensive counseling, inpatient rehabilitation, and hospitalization. Zeno-Ethridge's PTSD has caused her to endure insomnia, sweating, headaches, crying, and heart-rate increases and she has been unable to work. During this time, Plaintiff Dennis Ethridge (hereinafter "Ethridge") has had to care for his wife and has suffered loss of consortium.

2. *Motions for Judgment on the Pleadings*

*Standard*

Analysis of a motion for judgment on the pleadings calls for the same framework as for a motion to dismiss:

> On a V.R.C.P. 12(c) motion for judgment on the pleadings, the issue is whether the movant is entitled to judgment as a matter of law on the basis of the pleadings. "For the purposes of the motion all well pleaded factual allegations in the nonmovant's pleadings and all reasonable inferences that can be drawn therefrom are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false." *Bressler v. Keller*, 139 Vt. 401, 403, 429 A.2d 1306, 1307 (1981). Where a plaintiff's pleadings contain allegations that, if proved, would permit recovery, a defendant may not secure a judgment on the pleadings. 5A C. Wright & A. Miller, Federal Practice and Procedure § 1368, at 527–28 (1990).

*Thayer v. Herdt*, 155 Vt. 448, 456 (1990).

A motion to dismiss under Rule 12 (b)(6) may be granted only if "it is beyond doubt that there exist no facts or circumstances that would entitle the [nonmoving party] to relief." *Dernier v. Mortg. Network, Inc.*, 2013 VT 96, ¶ 23, 195 Vt. 113 (quotation omitted). The court assumes all facts pled by the nonmoving party as true, including all reasonable inferences derived from those facts, and assumes any contravening facts in the moving party's pleadings are false. *Id.* "Dismissal under Rule 12(b)(6) is proper only when it is beyond doubt that there exist no facts or circumstances, consistent with the complaint that would entitle the plaintiff to relief. Put another way, the threshold a plaintiff must cross in order to meet [Vermont's] notice-pleading standard is 'exceedingly low.'" *Bock v. Gold*, 2008 VT 81, ¶ 4, 184 Vt. 575 (citing *Union Mut. Fire Ins. Co. v. Joerg*, 2003 VT 27, ¶ 4, 175 Vt. 196 and quoting *Henniger v. Pinellas County*, 7 F.Supp.2d 1334, 1336 (M.D.Fla.1998)).

## Analysis

### *Negligent Infliction of Emotional Distress ("NIED"), count 4*

The parties dispute whether Vermont law allows Zeno-Ethridge to recover for her NIED claim, and whether her other claims derive from the NIED claim or can stand on their own.

Negligent infliction of emotional distress is based on common law, and it allows a party to recover for emotional harms. Vermont allows plaintiffs to recover for NIED if a plaintiff endured a physical impact, see *Brueckner v. Norwich Univ.*, 169 Vt. 118, 125 (1999), or "if the plaintiffs were within the 'zone of danger.'" *Leo v. Hillman*, 164 Vt. 94, 101 (1995) (quoting *Vaillancourt v. Medical Ctr. Hosp. of Vermont*, 139 Vt. 138, 143 (1980)). In *Hillman*, the Vermont Supreme Court rejected the argument that Vermont should abandon the "zone of danger" test for a test based on foreseeability. 164 Vt. at 103. Some states have abandoned the specific NIED theories of recovery for the common negligence standard: duty, breach, causation, and (emotional) injury. *Bowen v. Lumbermens Mut. Cas. Co.*, 183 Wis. 2d 627, 517 N.W.2d 432 (1994); *Camper v. Minor*, 915 S.W.2d 437 (Tenn. 1996); *Graves v. Estabrook*, 149 N.H. 202, 818 A.2d 1255 (2003).

The "zone of danger" test allows recovery if the plaintiff: (1) was within the "zone of danger" of an act negligently directed at her by defendant, (2) was subjected to a reasonable fear of immediate personal injury, and (3) in fact suffered substantial bodily injury or illness as a result. *Brueckner v. Norwich Univ.*, 169 Vt. 118, 125 (1999) (citing *Vaillancourt v. Medical Ctr. Hosp. of Vermont*, 139 Vt. 138, 143 (1980)). The "zone of danger" test derives from *Savard v. Cody Chevrolet, Inc.*, in which a plaintiff recovered for emotional injury after a truck crashed into her home; she was not physically injured from the crash but was close enough that particulates from the crash landed on her. The Supreme Court explained its reasoning as follows:

> Our conclusion is that where negligence causes fright from a reasonable fear of immediate personal injury, and such fright is adequately demonstrated to have resulted in substantial bodily injury or sickness, the injured person may recover if

such injury or sickness would be proper elements of damage if they had resulted as a consequence of direct physical injury rather than fright.

*Savard v. Cody Chevrolet, Inc.*, 126 Vt. 405, 410 (1967). The parties dispute whether Zeno-Ethridge's facts qualify for this cause of action.

As to the "zone of danger" test, the issue is whether Zeno-Ethridge was in the "zone of danger," and whether she had a reasonable fear of immediate personal injury. The facts as set forth in the Amended Complaint include selected facts sufficient to meet the notice pleading standard, but they do not describe exactly all of the actual movements of the truck, Mr. Kaminski, and Zeno-Ethridge, or the timing of them, in a complete sequence with spatial information. Within the framework of the facts alleged, it could be that with more details, Zeno-Ethridge could have been in the zone of danger and could have reasonably feared immediate personal injury. Without additional facts, the court cannot conclude as a matter of law that Zeno-Ethridge was not in the zone of danger and therefore cannot conclude that there are no circumstances in which Zeno-Ethridge could recover. Accordingly, the NIED claim cannot be dismissed on this record based upon the "zone of danger" test.

Nor is Plaintiffs' NIED claim subject to dismissal based upon the physical impact test. Plaintiffs have pled that standing in brain and body matter itself is a physical impact and that Zeno-Ethridge has endured physical impacts after the accident: sweating, headaches, and increased heart rate. As with the "zone of danger" test, more factual details are needed to evaluate the applicability of the "physical impact" test.

Because more factual development is needed on the details of the physical movements of all parties during the entire incident, the court cannot conclude that there are no circumstances on which recovery could be grounded. Moving Defendants' requests to dismiss count 4, negligent infliction of emotional distress, must be denied.

*Negligence, count 1*

Plaintiffs assert Defendants were negligent in their roadwork, thereby causing Zeno-Ethridge to suffer physical, psychological, and physiological harms. Specifically, they allege Zeno-Ethridge has suffered from PTSD, and that PTSD is an actual, or physical, injury because it includes physical symptoms such as insomnia, sweating, headaches, crying, and increased heart-rate.

The four elements of a common law negligence claim are "a legal duty owed by defendant to plaintiff, a breach of that duty, actual injury to the plaintiff, and a causal link between the breach and the injury." *Zukatis v. Perry*, 165 Vt. 298, 301 (1996). Here, the parties devote most of their moving papers to "actual injury." Moving Defendants argue Plaintiffs have not alleged an actual injury.

The parties also dispute whether the court should allow this claim based on Plaintiffs' argument that recovery for PTSD is a novel theory that should not be dismissed based on pleadings alone. ECE asserts that Plaintiffs have not presented a "cogent reason" why the court

should stray from precedent. ECE's Reply to Counts I, III, IV, and V at 5. However, whether PTSD that is characterized by physical manifestations is an injury for purposes of negligence liability has not yet been considered in Vermont. Because of the allegations of physical manifestations, the court cannot conclude that there are no circumstances in which Zeno-Ethridge could recover. Accordingly, count 1, the negligence claim, cannot be dismissed as a matter of law.

## Breach of contract, count 2

Plaintiffs argue that Comcast VT's permit with the State of Vermont is a contract, that the other Moving Defendants are bound by this alleged contract as well, and that Moving Defendants' refusal to take responsibility for Plaintiffs' damages is a breach of contract. Additionally, Plaintiffs allege they are third-party beneficiaries of the permit/contract. There are several points of law that have been raised in relation to this claim: whether a permit is a contract; if so, whether Plaintiffs are incidental or third-party beneficiaries; if so, whether there is liability to individuals based on the government as the permitting party; and whether there is privity.

### Whether permits are contracts

ECE[2] argues that the permit is not a contract, and that Plaintiffs do not allege facts that the permit "involve[d] a bargained for exchange supported by consideration, as is required to form a contract." ECE's Mot. for J. on the Pleadings as to Count II of the Compl. as May be Amended at 3. Moving Defendants argue Vermont liquor permit law and out-of-state cases support the conclusion that permits are not contracts. *In re DLC Corp.*, 167 Vt. 544, 548 (1998); *Green Mountain Post, No. 1, Am. Legion v. Liquor Control Bd.*, 117 Vt. 405, 409 (1953); *Bd. of Comm'rs of Se. Louisiana Flood Prot. Auth.-E. v. Tennessee Gas Pipeline Co. LLC*, 88 F.Supp. 3d 615, 645 (E.D. La. 2015); *California Pub. Interest Research Grp. v. Shell Oil Co.*, 840 F.Supp. 712, 716 (N.D. Cal. 1993). The California *Shell Oil* case states summarily that NPDES (National Pollutant Discharge Elimination System) permits are not contracts. *Id.* at 716.

Plaintiffs argue that whether a permit is a contract is not settled law, relying on *King v. United States*, 301 F.3d 1270 (10th Circ. 2002). Plaintiffs also argue that the Vermont liquor permit cases cited by ECE should not be analogized to the instant case because liquor regulation differs markedly from other businesses.

Plaintiffs are correct that there is no bright-line law on whether a permit is a contract, but the consensus is that permits are not automatically contracts. Plaintiffs' reliance on *King* does not establish that the permit at issue here is a contract; whether the permit was a contract was not even directly at issue there. *King v. United States*, 301 F.3d 1270, 1276 (10th Cir. 2002). There, the Tenth Circuit considered a plaintiff whose property was injured by a fire set by students on nearby property. *Id.* The land where the students started the fire was owned by the United States, but the teacher had a permit from the United States to use the land. *Id.* at 1272. The teacher had a

---

[2] In its initial motion, ECE argued that Plaintiffs did not assert it breached a contract with it, so did not move for judgment on the pleadings as to this count. ECE's V.R.C.P. 12(c) Mot. for J. on the Pleadings at 2. In their opposition, Plaintiffs clarified they are asserting a breach of contract claim against ECE.

cabin on the land and was camping with students. *Id.* The U.S. Forest Service issued the permit, which was called a Term Special Use Permit, that allowed the teacher to use the federal land. *Id.* at 1272. The Tenth Circuit summarily stated that "[w]e have previously held that such a permit is a contract." *Id.* at 1276. The court is not persuaded that the holding in *King* compels the court to conclude that the permit here is a contract. The facts here are different because no land ownership or possession or right to use of property gave rise to Plaintiffs' claims. Simply because a court has found a particular type of permit to constitute a contract in one set of circumstances does not mean that all permits are contracts.

The Vermont liquor permit cases focus on permits of a type designed to regulate behavior rather than embody a contractual type of relationship: "[b]ecause of the tendency of the use of intoxicating liquors to deprave public morals, it has come to be the generally accepted doctrine that the manufacture or sale of such liquors, and even their possession or use, is not a matter of 'common', 'inherent', or 'natural' right, but, if a right at all, is one held subject to the police power of the state." *Green Mountain Post, No. 1, Am. Legion v. Liquor Control Bd.*, 117 Vt. 405, 409 (1953). As such, the court finds the type of permit involved in liquor permit cases is more akin to the permit involved in this case: certain behavior is permitted by the government as long as it is done in a manner that conforms with what is required under the government's regulatory authority.

Much of the out-of-state authority concludes that permits are not contracts. *California Pub. Interest Research Grp. v. Shell Oil Co.*, 840 F.Supp. 712, 716 (N.D.Cal.1993) (finding that an NPDES permit is not a contract; rather it is a legally enforceable rule drafted by a regulatory agency); *Chance Mgmt., Inc. v. State of S.D.*, 97 F.3d 1107, 1113 (8th Cir.1996) (holding that "[p]ublic licensure is not generally contractual in nature: a license neither grants the licensee a property right nor creates a mutual obligation"); *Lichterman v. Pickwick Pines Marina, Inc.*, No. 1:07–256, 2010 WL 1709980, at *2 (N.D.Miss. Apr. 23, 2010) (finding that a license is "[a] permit, granted by an appropriate governmental body, generally for a consideration, to a person, firm or corporation to pursue some occupation or to carry on some business subject to regulation under the police power. A license is not a contract between the [granting governmental body] and the licensee, but is a mere personal permit."); *Toye Bros. Yellow Cab Co. v. Coop. Cab Co.*, 199 La. 1063, 7 So.2d 353, 354 (1942) (stating that "[a] license is not a contract nor property in any constitutional sense") (citation omitted).

American Jurisprudence also states that a license is not a contract. 51 Am. Jur. 2d *Licenses and Permits* § 2 (WL updated May 2020). Black's defines 'permit' as "[a] certificate evidencing permission; an official written statement that someone has the right to do something." Black's Law Dictionary, permit (11th ed. 2019) (WL).

On the basis of the reasoning in out-of-state case law, the Vermont liquor permit cases, the plain language of the permit, and after consideration of the parties' arguments, the court concludes the permit at issue here is not a contract. It was not a bargained-for exchange, but a license resulting from the exercise of government regulatory power.

While this conclusion supports dismissal of the breach of contract claim, the parties gave considerable attention to the other related issues described above, and therefore the court addresses them as well.

*Incidental or third-party beneficiaries*

Plaintiffs' breach of contract claim also fails because they are not third-party beneficiaries of the permit, assuming *arguendo* that third-party beneficiaries of a permit enjoy the same rights as third-party beneficiaries of a contract. Plaintiffs attached the permit at issue to their complaint as Exhibit A, which purports to allow Comcast to complete work along Route 7. When determining a motion to dismiss (or motion for judgment on the pleadings), the court may rely to some extent on outside documents on which the pleadings rely, such as the permit here. See *Davis v. Am. Legion, Dep't of Vermont*, 2014 VT 134, ¶ 13, 198 Vt. 204 (citing *Kaplan v. Morgan Stanley & Co.*, 2009 VT 78, ¶ 10 n.4, 186 Vt. 605).

The parties dispute whether the permit in this case was intended to benefit people such as Plaintiffs. Comcast VT argues that the permit did not so intend, and that thus Plaintiffs do not have a sufficiently cognizable basis to sue for damages. Whether a person is a third-party or incidental beneficiary "is based on the original contracting parties' intention." *McMurphy v. State*, 171 Vt. 9, 16 (2000) (citing *Morrisville Lumber Co. v. Okcuoglu*, 148 Vt. 180, 184 (1987)); *Sutton v. Vermont Regional Center*, 2019 VT 71A, ¶ 64.

The parties dispute how to determine the intention of the parties to the permit: by considering specific phrases within the permit, or considering the permit as a whole? The permit's second page states: "The Owner/Applicant shall erect and maintain barriers needed to protect the traveling public. The barriers shall be properly lighted at night and must be MUTCD (Manual on Uniform Traffic Control Devices) compliant." The permit's fifth page[3] states: "The District Transportation Administrator may require a similar sign package with trained Flaggers whenever it is deemed necessary for the protection of the traveling public."

At most, Moving Defendants assert Plaintiffs were incidental beneficiaries of the permit, and incidental beneficiaries do not have a right to enforce a contract. Moving Defendants rely on *Walker Motors, Inc. v. City of Montpelier*, No. 921-12-10 Wncv, 2013 WL 7346975, (Vt. Super. Ct. Dec. 30, 2013); *McMurphy v. State*, 171 Vt. 9, 16 (2000); *Morrisville Lumber Co. v. Okcuoglu*, 148 Vt. 180, 184 (1987); *Sutton v. Vermont Regional Center*, 2019 VT 71, ¶ 66[4]; and *Herbert v. Pico Ski Area Mgmt. Co.*, 2006 Vt. 74, ¶ 15.

Plaintiffs attempt to distinguish Vermont case law and argue that they brought their breach of contract claim against Comcast VT, Comcast Corp., and ECE because each is an applicant or co-applicant of the permit. However no 'co-applicants' are listed on the permit;

---

[3] The permit's pages are not accurately numbered. The fifth page is marked 'Page 2 of 4', possibly because it is part of the 'Special Conditions' which appears to have been attached separately.

[4] See Opinion issued after reargument at *Sutton v. Vermont Regional Center*, 2019 VT 71A, ¶ 64.

'Comcast' is listed as the Owner/Applicant. See Ex. A to Compl. at 1. Based on the permit's plain language, only 'Comcast' obtained a permit from the State.

Comcast VT argues that the facts here parallel those in *McMurphy* regarding the "public," and that the "traveling public" in the permit at issue here does not have a private right of action, even though the public may benefit from the permit and subsequent work completed, because the permit did not intentionally treat members of the public as more than incidental beneficiaries. Def. Comcast VT's V.R.C.P. 12(c) Mot. for J. on the Pleadings at 6–7. Plaintiffs assert that "protect the traveling public" coupled with Comcast VT's liability for "all damages to persons or property resulting from any work done under this permit" establish that Plaintiffs were intended beneficiaries. See Ex. A to Compl. at 2.

The *McMurphy* Court stated: "[o]bviously, the public benefits from properly maintained highways; however, the most effective, convenient, and economical method of doing so is <u>not for their direct benefit</u>, but for their incidental benefit." *McMurphy*, 171 Vt. at 17 (emphasis added). In *Walker Motors*, the superior court found that even though the plaintiff was mentioned in the contract, that was not enough to establish the plaintiff's private right of action. *Walker Motors, Inc. v. City of Montpelier*, No. 921-12-10 Wncv, 2013 WL 7346975, at *6 (Vt. Super. Ct. Dec. 30, 2013). There, the plaintiff was handwritten into the contract, but the trial court ruled that the plaintiff had not cleared the high hurdle of establishing that the contract intended to benefit him. *Id.*

Plaintiffs distinguish between 'public interest' and 'protecting the traveling public,' arguing that the latter, as present in Comcast's permit, is directed towards the traveling public, as opposed to the language in *McMurphy* which incidentally referred to the public but primarily referred to the State and City of Rutland. The parties further dispute whether "protect the traveling public" should be considered broadly (and include Plaintiffs) or narrowly (limited to general regulation of traffic conditions). Plaintiffs also argue that the State's and Comcast VT's intent, as the parties to the permit, is a jury question. However, Plaintiffs cite no cases in which a court held that members of the public may bring a breach of contract claim under similar circumstances.

Considering the permit's language as a whole, the court concludes that the purpose of the permit was for the permittee to conduct its business of internet and/or telephone cable installation and maintenance in a manner consistent with public safety on roads. This case falls well within *McMurphy* despite Plaintiffs' attempt to distinguish it. There, the parents of a driver killed in car accident at an intersection brought a wrongful death action against the state, which built the intersection, and the town, which maintained the intersection. *McMurphy v. State*, 171 Vt. 9 (2000). The language at issue stated: "It is further understood and agreed that the giving over of said maintenance and repair is in the best public interest." *Id.* at 16. While the permit's language here more strongly sets forth a benefit to the traveling public's safety, it does not rise to the level of establishing a private right of action for the public to bring a breach of contract claim, even if the court were to determine that the permit is a contract. Plaintiffs were not third-party beneficiaries of the permit. Accordingly, the breach of contract claim is subject to dismissal on this ground as well.

*Government contracts per § 313 of the Second Restatement of Contracts*

Alternatively, Plaintiffs argue that § 313 of the Restatement (Second) of Contracts supports their breach of contract claim. Section 313 states:

> (1) The rules stated in this Chapter apply to contracts with a government or governmental agency except to the extent that application would contravene the policy of the law authorizing the contract or prescribing remedies for its breach.
> (2) In particular, a promisor who contracts with a government or governmental agency to <u>do an act for or render a service to the public</u> is not subject to contractual liability to a member of the public for consequential damages resulting from performance or failure to perform unless
>> (a) the terms of the promise provide for such liability; or
>> (b) the promisee is subject to liability to the member of the public for the damages and a direct action against the promisor is consistent with the terms of the contract and with the policy of the law authorizing the contract and prescribing remedies for its breach.

Restatement (Second) of Contracts § 313 (emphasis added). Comcast VT argues that § 313 does not apply because it did not perform a governmental function, the State has not been sued for dereliction of its duty to keep the roads safe, and Comcast VT is not obligated to indemnify the State.

Other courts split regarding when a plaintiff may recover pursuant to § 313. The First Circuit has held that a plaintiff may recover per § 313 only if the contract intends to benefit a third-party and expresses the intention that a third-party may enforce that intention. *Cooper v. Charter Commc'ns Entertainments I, LLC*, 760 F.3d 103, 109–10 (1st Cir. 2014) (citing 9 J. Murray, *Corbin on Contracts* § 45.6, p. 92 (rev. ed. 2007)). In *Cooper*, the contract "require[d] [defendant] Charter to 'grant a pro rata credit or rebate to any Subscriber whose entire Cable Service is interrupted for twenty-four (24) or more consecutive hours,'" but the court was "nevertheless persuaded by the language of the contract as a whole that the parties did not intend individuals to hold power to enforce it." *Id.* at 110. There, the court held that plaintiffs may not recover, even though the plaintiffs were named in the contract as 'Subscriber[s]'. *Id.*

> The plaintiffs contend that they can sue as third-party beneficiaries to enforce the licensing agreements incorporating the statutory mandate. Under Massachusetts law, to prevail on a third-party beneficiary claim, a plaintiff must establish that the "language and circumstances of the contract show that the parties to the contract clearly and definitely intended the beneficiary to benefit from the promised performance." *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 455 Mass. 458, 466, 918 N.E.2d 36 (2009) (internal quotation marks, alterations omitted). Because government contracts by their very nature tend to benefit the public, Massachusetts courts apply a presumption against finding third-party liability in assessing those contracts, overcome only where the language and circumstances of the contract make it particularly clear that the parties intended members of the public to possess enforcement power. *See MacKenzie v. Flagstar Bank, FSB*, 738 F.3d 486, 491 (1st Cir.2013) (applying Massachusetts law). In assessing attempts by third parties to enforce government contracts, we pay special heed

to "[t]he distinction between an intention to benefit a third party and an intention that the third party should have the right to enforce that intention," with only the latter supporting third-party enforcement. 9 J. Murray, *Corbin on Contracts* § 45.6, p. 92 (rev. ed.2007) (quoted in *Laguer v. OneWest Bank, FSB,* 2013 WL 831055, at *11 (Mass.Super. Feb. 27, 2013)).

*Id.*

A Georgia Court of Appeals allowed a plaintiff to recover when its pipeline was damaged during sewer repair. *Plantation Pipe Line Co. v. 3-D Excavators, Inc.,* 287 S.E.2d 102, 105 (1981). The court reasoned, "the plaintiff is a member of a relatively small group of intended beneficiaries, that is, those individuals whose obstructions and utilities were in such proximity to the construction work to be completed under the contract as to be reasonably afforded the contractual protection incorporated in the contract in question here." *Id.* at 105. However, in that case, there was clearly a contract between a county and defendant, and not a permit issued pursuant to regulatory authority.

Plaintiffs argue illustration 5 of § 313 supports their argument here, which states:

A, a municipality, owes a duty to the public to keep its streets in repair. B, a street railway company, contracts to keep a portion of these streets in repair but fails to do so. C, a member of the public, is injured thereby. He may bring actions against A and B and can recover judgment against each of them.

Restatement (Second) of Contracts § 313 cmt. c, illustration 5. However, Plaintiffs ignore that in illustration 5 the work completed is road repair, not temporary use of road facilities for the purpose of installing an internet and/or phone line. Plaintiffs do not claim that Moving Defendants were engaged in road repair at the time of the incident.

Assuming *arguendo* that the permit is a contract, a conclusion the court has already rejected, this argument also fails. The conduct permitted was not "for the public." § 313(2). Plaintiffs do not argue that Comcast's business *is* for the public. The fact that work for private benefit is required to be performed in a manner consistent with public safety does not mean that the intent of the private work is for the benefit of members of the public. The permit intended to benefit Comcast's business and customers, not the public. The requirement that the work be performed in a manner consistent with highway safety is ancillary to the primary purpose of the work.

Adopting the First Circuit's analysis in *Cooper*, and considering the purpose of the permit, the court concludes that the parties to the permit did not intend to create a private right of action for people such as Plaintiffs. Thus, Plaintiffs' breach of contract claim is subject to dismissal on this ground as well.

*Whether Comcast Corp. had privity with Plaintiffs*

Additionally, Comcast Corp. argues it is not in privity with Plaintiffs, and therefore cannot have contractual liability. Comcast Corp. argues it was not involved with obtaining the

permit, or performing or supervising the permit's work. Comcast Corp. also argues that a contract under the corporate name of one entity should not be treated as a contract for a different entity, relying on *S.M. v. Oxford Health Plans (N.Y.)*, 644 Fed. Appx. 81, 85 (2d Cir. 2016) (interpreting New York law). Essentially, Comcast Corp. argues that a different entity (Comcast VT) obtained the permit, and that it (Comcast Corp.) cannot be held liable for the other entity's action. The permit only names 'Comcast' as the permit's applicant.

Conversely, Plaintiffs argue that Comcast Corp.'s privity argument contradicts the Stipulation filed May 24, 2019, which dismissed a number of Defendants and stated that Comcast Corp. and Comcast VT "agree that they will not assert as a defense that the responsibility or liability for any of the Plaintiffs' claims in this matter are attributed to any other Comcast entity including any of the [dismissed] entities. . . ." Comcast Corp. rejects this argument, asserting that no Comcast entities are liable or responsible, and that if the Stipulation is ambiguous, then the ambiguity must be construed against Plaintiffs as the drafters of the Stipulation. See *Towslee v. Callanan*, 2011 VT 106, ¶ 9, 190 Vt. 622.

Plaintiffs also argue that the facts pled establish that Comcast Corp. was a party to the permit, and, alternatively, that additional discovery is needed to discover if the permit was issued to Comcast Corp. or Comcast VT, and if only Comcast VT, then whether it is appropriate to hold Comcast Corp. liable for the actions of its subsidiary. Plaintiffs seek to discover if the Comcast signatory on the permit is employed by Comcast Corp. or Comcast VT, and which Comcast entity is associated with the Comcast address on the permit. Comcast Corp. rejects these arguments, asserting that the pled facts will not change in discovery, and that there will be no need to pursue this because Comcast VT's insurance coverage is five million dollars, as stated in the Stipulation.

As noted above, the only applicant to the permit is 'Comcast'; no co-applicants are indicated. While not noted on the first page of the permit, the final page of the permit (a letter from Vermont's Permit Coordinator to Jeremy Cota) indicates that the permit applicant was Comcast Communications, which was never a named Defendant. There is no need to reach this issue, because the breach of contract claim fails for the reasons set forth above.

*Premises liability, count 3*

Plaintiffs' premises liability claim fails because Moving Defendants did not own or possess the land where the incident occurred. Plaintiffs argue Moving Defendants were "in possession of the breakdown lane, right of way, and related lands described in the permit[,]" over which they had a duty of reasonable care, and that they "permitted and engaged in an unreasonably dangerous condition" on the premises which harmed Zeno-Ethridge. Am. Compl. ¶¶ 101–108. The parties agree that a premises liability claim is based on ordinary negligence (duty, breach, causation, and injury). Moving Defendants argue that because the premises liability claim is one of ordinary negligence it must fail because Vermont law does not allow recovery for emotional injuries in negligence claims, relying on *Vincent v. DeVries*, 2013 VT 34, 193 Vt. 574.

Property owners (and possessors) owe a duty of reasonable care to all lawful entrants. *Demag v. Better Power Equip., Inc.*, 2014 VT 78, ¶ 26, 197 Vt. 176. However, Moving Defendants here did not possess or own the property where Zeno-Ethridge was allegedly injured.

The permit states "neither this permit nor any prior pattern of use creates an ownership interest or other form of right. . . the right of access consists merely of a right to reasonable access the general system of streets. . . ." Ex. A to Compl. at 2. The permit required insurance, including "Premises – Operations" Ex. A to Compl. at 7. However, the parties do not argue that insurance created a possessory or ownership interest in the land. Accordingly, the court dismisses Plaintiffs' premises liability claim because the permit explicitly states that it does not create an ownership interest or other form of right.

### Loss of consortium, count 5

A loss of consortium claim is a derivative action and depends on "the success of the underlying tort claim, and arises on account of the injured [person's] physical injury." *Derosia v. Book Press, Inc.*, 148 Vt. 217, 220 (1987) (citing *Hay v. Medical Center Hospital*, 145 Vt. 533, 539 (1985)). Plaintiffs argue that Ethridge "has lost consortium of his wife, and has otherwise suffered harm by the injuries that Jennifer Zeno-Ethridge suffered." Because the court does not dismiss the NIED or negligence claims, this claim survives.

## ORDER

For the foregoing reasons:

1. Defendant Eustis Cable Enterprises, LTD's Motion for Judgment on the Pleadings (No. 3) is *granted in part* and *denied in part* as follows:
   - Count 3 (premises liability) is *dismissed*; count 1 (negligence), count 4 (negligent infliction of emotional distress), and count 5 (loss of consortium) remain.

2. Defendant Comcast VT's Motion for Judgment on the Pleadings (No. 7) is *granted in part* and *denied in part* as follows:
   - Count 2 (breach of contract) and count 3 (premises liability) are *dismissed*; count 1 (negligence), count 4 (negligent infliction of emotional distress), and count 5 (loss of consortium) remain.

3. Defendant Comcast Corp.'s Motion for Judgment on the Pleadings (No. 8) is *granted in part* and *denied in part* as follows:
   - Count 2 (breach of contract) and count 3 (premises liability) are *dismissed*; count 1 (negligence), count 4 (negligent infliction of emotional distress), and count 5 (loss of consortium) remain.

4. Defendant Eustis Cable Enterprises, LTD's Motion for Judgment on the Pleadings as to Count II of the Complaint as May be Amended (No. 12) is *granted*. Count 2 (breach of contract) is *dismissed*.

5. Defendant Eustis Cable Enterprises, LTD's Motion for Judgment on the Pleadings as to Counts I, III, IV, and V of the Complaint as May be Amended (No. 13) is *granted in part* and *denied in part* as follows:

   - Count 3 (premises liability) is *dismissed*; count 1 (negligence), count 4 (negligent infliction of emotional distress), and count 5 (loss of consortium) remain.

6. Plaintiffs' First Motion to Amend Complaint (No. 6) is *granted*.

7. Joint Stipulation for Extension of Time to Respond to Plaintiffs' Motion to Amend Complaint and Oppositions to ECE Cable Enterprises, LTD's, Comcast Corp., and Comcast VT's Motions for Judgment on the Pleadings (No. 11) is *granted*.

DATED at Middlebury, County of Addison, Vermont this 5th day of August, 2020.

_Mary Miles Teachout_
Mary Miles Teachout
Superior Court Judge